𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WILCHER AND ALS. V. ROBERTSON.

February 14, 1884.

1. JUDGMENTS AND DECREES—*Conclusiveness.*—It is essential to the jurisdiction which gives a judgment conclusiveness that the defendant had legal notice. If the record shows no notice, the judgment is null. If the judgment be of a court of general jurisdiction, and the record shows legal notice to defendant, extrinsic evidence is inadmissible to show want of such notice. As to decrees under which sales have been made to *bona fide* purchasers, this is especially true.

2. IDEM—*Idem—Non-residents—Publication.*—Where a defendant is proceeded against as a person in being and as a non-resident of this State, and an order of publication was accordingly made and regularly executed, its effect is equivalent to an averment on the record that he had in fact been summoned, which averment cannot be contradicted in a collateral proceeding.

3. IDEM—*Strangers impeaching.*—Those strangers to the record only are entitled to impeach a judgment, who, if it were given full credit and effect, would be prejudiced *quoad* some pre-existing right.

4. IDEM—*Bar to another suit—Dismissal.*—That a judgment bar another suit, the point in controversy must be same in both cases; and in the first must have been determined on its merits. Order of dismissal is not a determination on its merits, and is no bar to second suit for same cause of action.

5. LANDLORD AND TENANT—*Attornment—Notice.*—Mere occupancy does not imply tenancy, yet if occupant acknowledge owner's title, and by his leave continue to occupy the land, he ceases to be a trespasser, and his possession is that of him whose title he acknowledged. By afterwards acknowledging another's title, he cannot be considered as holding under the latter adversely to the former, until after notice to him whose title he first acknowledged.

6. EJECTMENT—*Outstanding title.*—To defeat an action of ejectment, an outstanding title must be a present, subsisting, operating legal title, on which the owner could recover if asserting it by action.

Error to judgment of circuit court of Augusta county, rendered 9th April, 1883, in action of ejectment removed thither from Alleghany county, and wherein Harrison Robertson was plaintiff and John H. Wilcher, Alexander Wilcher, George T. Wickes and Daniel B. Leighton were defendants.

The land actually in controversy was about 150 acres, being a portion of a tract granted by the Commonwealth to Richard Wilcher by patent, dated June 1st, 1852. About 150 acres of said tract is covered by an older patent from the Commonwealth, issued December 4th, 1795, for 14,000 acres, to Benjamin Martin. The defendants claimed title under Richard Wilcher. The plaintiff claimed 9,000 acres, part of the 14,000 acres granted to Benjamin Martin under deed of 24th July, 1872, from David I. Wilson, who claimed under deed from Thomas J. Stewart, special commissioner of the circuit court of Augusta county, in the chancery causes of Hudson and Wilson's administrator v. Benjamin Martin, the patentee, and Hudson v. the same. At the trial of the said action of ejectment, in order to show that Commissioner Stuart was authorized to execute his deed the plaintiff introduced copies of the records in the two said chancery causes. Benjamin Martin was never a citizen of Virginia, but was proceeded against in said chancery causes as a non-resident by publication. Said causes were instituted in 1829. The defendants then offered to prove by parol evidence that said Benjamin Martin, the patentee and defendant, died in 1825, of course before the pronouncement of the decree authorizing the special commissioner to execute his deed of conveyance to said David I. Wilson, from whom the plaintiff claimed title. But the court refused to admit the evidence, and the defendants excepted—said David I. Wilson having in the circuit court of Alleghany county filed a *caveat* against the issue of the patent to said Richard Wilcher, under whom the defend-

ants claimed, and there having been entered in the said court the following order—to wit:

"At a circuit court continued and held for the county of Alleghany, at the courthouse thereof, on the 17th day of April, 1852, David I. Wilson, plaintiff v. Richard Wilcher, defendant. *Caveat.* Cause dismissed. By consent of the parties and for reasons appearing to the court, ordered that this cause be dismissed."

The defendants introduced the record of said *caveat* proceedings, including the said order, and moved the court to give an instruction in the words and figures following, to-wit:

" The jury are instructed that the record and proceedings of the circuit court of Alleghany county in the caveat suit of David I. Wilson against Richard Wilcher is evidence of a disclaimer by the said Wilson of tenancy to him by said Wilcher, and the judgment therein entered operates as a bar-against the claims of said Wilson and those claiming under him to the land in controversy, if the jury shall find that the land described in said record and proceedings embraced the land in controversy in this suit."

But the court refused to give said instruction as presented, and in lieu thereof gave a portion of the same, in the words and figures following, to wit:

" The jury are further instructed that the record and proceedings of the circuit court of Alleghany county, in the caveat suit of David I. Wilson against Richard Wilcher, is evidence of a disclaimer by the said Wilson of tenancy to him by said Wilcher."

And the defendants thereupon excepted.

The verdict and judgment being for the plaintiff, the defendants obtained a writ of error and *supersedeas.* The opinion of the court states the other facts and proceedings.

This case was argued at Staunton and decided at Richmond.

*Edmund Pendleton* and *Robert L. Parrish*, for the plaintiffs in error.

1. After the plaintiff offered in evidence his paper title—as follows: 1st, Commonwealth's patent to Benjamin Martin; 2d, the two chancery records of *Hudson* v. *Benjamin Martin*, and *Wilson* v. *Same ;* 3d, deed from Thomas J. Stuart, commissioner, to David I. Wilson, and 4th, deeds from David I. Wilson to the plaintiff—he rested his case. Whereupon the appellants offered to read in evidence depositions for the purpose of showing that at the time the chancery suits of Wilson and Hudson against Benjamin Martin, the patentee of the land in controversy were instituted, the said Benjamin Martin was dead.

The plaintiff objected to the reading of these depositions, because, he alleged : 1st, that said depositions would tend to contradict the records, which he said could not be done by parol evidence, and 2d, because the declarations of the deceased persons were not of facts known to the declarants, but of facts that the declarants knew from heresay.

The second ground of objection above stated was not vigorously pressed in the court below. We will, therefore, dismiss it by citing the authorities, which are conclusive, as follows : *Doe* v. *Griffin*, 15 East. 292 ; *George* v. *Jesson*, 6 East. 80 ; *Doe* v. *Deakin*, 6 Eng. C. L. 476 ; *Gregory* v. *Baugh*, 4 Rand. 613 ; 2 Starkie on Ev., side page 845 ; 1 Greenl. on Ev. §§ 103 et seq; 2 Greenl. § 278 ; *Jackson* v. *Ety*, 5 Cow. 314.

But the court below sustained the first objection and excluded the depositions. It is undeniable law that want of jurisdiction or fraud in the procurement of a judgment may be shown in any collateral proceeding. *Gray* v. *Stuart & Palmer*, 33 Gratt. 358 et seq ; *Underwood* v. *McVeigh*, 23 Gratt. 417 to 448, inclusive, where the question is fully discussed and numerous authorities cited. And when want

of jurisdiction or fraud is shown, as was said by the court in *Gray* v. *Stuart & Palmer*, 33 Gratt. 359, "a judgment or decree is a mere nullity, *void in toto*, and is no more effective than if it had never been pronounced." A court is said to have jurisdiction of a case when it not only has jurisdiction of the subject matter of the suit, but jurisdiction of the defendant also. No court can acquire jurisdiction over a dead man by order of publication or otherwise. If, therefore, we prove that the defendant, Benjamin Martin, was dead when the suits in question were instituted, we not only show that the court had no jurisdiction of the case, but that a fraud was practiced, and, as was said in *Gray* v. *Stuart & Palmer*, *supra*, 359, "it follows that the defendant, never having had notice, and in fact never being before the court, the judgment entered against him is no judgment at all, and he must be regarded as out of the case." See also *Shaefer* v. *Gates*, 2 B. Monroe, 455; *Webster* v. *Reid*, 11 Howard, 460; 7 Rob. Pr. 117, and cases cited; *Gowdy* v. *Hall*, 30 Ill. 109. And if Benjamin Martin, who was in his grave several years before the suits aforesaid were instituted, is to be regarded as out of said suits, there being no human power to put him in them, it is manifest that the decree of the court could not, and did not, pass the legal title to the land in controversy to David I. Wilson, through the deed of Stuart, commissioner. For when these suits were instituted the legal title was not in Benjamin Martin, but in his heirs at-law, who were not before the court. No man can be made a party to a suit except by notice, either actual, as by personal service, or constructive, as by publication. And when notice was served by publication the law required that it should be published in the newspaper "best calculated to apprise the absent defendant of the pendency of such suit." Code of 1819, vol. 1, page 474, § 2. Indeed, the service of notice by publication is based upon the idea that this is the most probable

method of bringing knowledge of the pendency of the suit to the defendant who is beyond the reach of personal service. Therefore, the supreme court of the United States, in the case of *Dean* v. *Nelson,* 10 Wall. 172, decided that a judgment rendered against a defendant who was in the enemy's lines, and was proceeded against by publication was a mere nullity, because the defendant " could not lawfully see nor obey the publication." The same decision was made in a similar case in the superior court of Chicago, and the court, in delivering its opinion, said : " Titles thus acquired would rest upon a basis of robbery, and not upon a judicial divestiture of the debtor's interest, recognized as just, *jure gentium* " Robertson's Pr. vol. 7, page 22, note 109. If this doctrine is sound in respect to living defendants, who are prevented by bayonets from obeying the summons, is it not *a fortiori,* sound in respect to men whose senses are paralyzed by death ? Indeed, it is abundantly settled both by reason and authority that a judgment against a man dead when the suit was instituted is not voidable merely, but that it is void *ab initio,* a mere nullity, and that it may be so shown in a collateral proceeding by any one against whom it is attempted to be used. *Matthey* v. *Wiseman,* 114 Eng. Com. Law Rep.; *Griswold* v. *Stewart,* 4 Cow. N. Y. 457 ; *Loring* v. *Folger,* 7 Gray (Mass.) 505 ; *Carter* v. *Carrigen,* 3 Yerg. (Tenn.) 411 ; *Morse* v. *Toppan,* 3 Gray, 411 ; *McCreery* v. *Everding,* 44 Cal. 284.

In the cases above cited the record was attacked collaterally by parties or privies. The general rule is that a party or privy is bound by the record until reversed by appeal or set aside by a direct proceeding instituted for that purpose, and yet in all the cases cited, including *Underwood* v. *McVeigh, supra,* a party or a privy was permitted to attack the record collaterally because the judgments were void, and not merely voidable.

If these judgments had been voidable merely, they could not have been assailed collaterally by parties or privies. *A fortiori,* may strangers, to avoid judgment, attack it collaterally, because they have no direct remedy, and can only complain when it is sought to be used to their injury. In other words, a void judgment is harmless against whomsoever it may be offered to be used. See *Pegy Nason* v. *Blaisdell,* 12 Vermont, 165; *Atkinson* v. *Allyn,* 12 Vermont, 619; *Callahan* v. *Griswold,* 9 Missouri, 784; *De Armond* v. *Adams,* 25 Indiana, 456; *Vanderveeve* v. *Mason,* 4 Zabriskie (N. J.), 818; *Hall* v. *Hamlin,* 2 Watts (Pa.), 354; *Gowdy* v. *Hall,* 30 Illinois, 109; *Sidensparker* v. *Sidensparker,* 52 Maine, 486; *Lafflin* v. *Field,* 6 Metcalf (Mass.), 289; *Leonard* v. *Bryant,* 11 Metcalf, 370; *Gray* v. *Stuart & Palmer,* 33 Gratt. 358; *Dean* v. *Nelson,* 10 Wallace, 172.

It is a fundamental rule in ejectment that "the plaintiff must recover solely upon the strength of his own title." The plaintiff always fails if defendant shows that the legal title to the land in controversy is outstanding in another. Sedg. & Waite on Title to Land, §§ 57 and 477. In the case at bar the defendants tendered proof that the legal title is outstanding in the heirs at law of Benjamin Martin, and the court below rejected the evidence. If Ben. Martin's heirs were never divested of their title, how can the title be in the plaintiff in the court below? It cannot be, and hence this record presents the anomalous case of a plaintiff in ejectment, without title, recovering "upon the strength of his title." What boots it that the rights of the appellants were acquired subsequent to the date of the deed from Commissioner Stuart to David I. Wilson? The decree upon which that deed was based was void, and the courts say that a void decree stands as "if it had never been pronounced." That deed, therefore, did not convey the legal title, and lapse of time has not improved it. Time may, and does, obscure facts, and makes it more

difficult to show the truth, but it never galvanizes into life a thing that is absolutely void *ab initio.*

2. The court below erred in refusing to give the instruction asked for by the defendants.

Richard Witcher's survey was made on December 7, 1849. Soon after it was filed in the land office, David I. Wilson, appellee's vendor, entered a *caveat* against the issuing of a patent for the land, 187 acres, described in said survey. The *caveat* was returned to the circuit court of Alleghany county for trial, and process was issued on the same on August 31, 1850. This suit was continued on the docket until April 17, 1852, when it was "dismissed agreed." And thereupon a patent for the 187 acres was issued to Richard Wilcher. In a *caveat,* as in all other suits, a judgment upon the merits is a final settlement of the controversy. *Patrick* v. *Dryden,* 10 West Va. 412.

It is now settled in Virginia that a dismissal of a suit "agreed" is equivalent to a *retraxit. Hoover* v. *Mitchell,* 25 Gratt. 387. This doctrine is also held in Kentucky, California and Nevada. *Bank of Commonwealth* v. *Hopkins,* 2 Dana, 395; *Jarboe* v. *Smith,* 10 B. Monroe, 257; *Philpot* v. *Blasdell,* 10 Nevada, 19; Freeman on Judgments, § 262; 2 Tucker's Com. 251. It follows, therefore, that the judgment of the circuit court of Alleghany in the *caveat* suit, dismissing said suit "by consent of parties and for reasons appearing to the court," is a bar to the action of the appellee in the court below, and said court should have so instructed the jury.

3. The bill of Hudson and Wilson v. Martin, and the heirs of Robert Morris alleges that the patentee, Benjamin Martin, sold 9,000 acres of land, including the land in controversy, to Robert Morris. The bill also alleges that Martin probably made title to said Morris, and seeks to make the heirs at law of Morris parties defendant. It is respectfully submitted that the appellee is bound by the allega-

tion of a probable conveyance contained in said bill, and if we are correct in this, it was absolutely necessary for the appellee to prove that the parties, alleged in the bill, to be the heirs at law of Robert Morris, are his heirs at law. The case of *Duncan* v. *Helms*, 8 Gratt. 68, is directly in point.

*J. R. Tucker,* for defendant in error.

The main question in this case is this : Plaintiff in ejectment claims under decree in a chancery cause, to which, by regular order of publication, Benjamin Martin, an absent defendant, was made a party. The title was in him, and plaintiff claims his title by virtue of the decree and deed made thereunder. Chancery cause was brought in 1829; decree in 1837 ; sale and confirmation thereof and deed accordingly in 1840. Defendant in ejectment claims under Commonwealth's patent dated in 1852.

The following points are established :

1. The decree was made by a superior court of general jurisdiction, according to its regular practice.

2. The defendant claims under Commonwealth's patent long posterior to the plaintiff's deed, and does not claim under or in priority with Benjamin Martin or his heirs, but really adversary title against them.

The question is, Can defendant offer evidence tending to prove that at the date of chancery suit brought Benjamin Martin was dead ? We say the evidence is inadmisible. The chancery court is a court known as a superior, not an inferior, court of general jurisdiction. *Cox* v. *Thomas,* 9 Gratt. 323 ; *Fisher* v. *Bassett,* 9 Leigh. The judgments and decrees of such courts import absolute verity, and cannot be impugned by evidence to the contrary; behind which no inquiry can be made save by appeal, or by direct assault by one whose right was injured thereby, and therefore existed anterior to the decree. *Peacock* v. *Bell,* 1

Saunders' Rep. 73, and notes; *Crepps* v. *Durden*, 1 Smith's Lead. Cases, and English and American notes on this whole subject; *Gregnon* v. *Astor*, 2 How. 319; *Burnstead* v. *Burnstead*, 40 Barb. 661; *Shelden* v. *Wright*, 1 Seld. 497; *Borden* v. *State*, 6 English, 519; *Ins. Co.* v. *Bangs*, 103 U. S. S. C. Rep. 437; *Neale* v. *Utz*, 1 Mathews, 480; 22 Gratt. 378; 27 Id. 627; *ex parte Watkins*, 3 Peters, 193; *Balch* v. *Shaw*, 7 Cush. 282. Also a number of English cases bearing on the question: *R.* v. *Hickling, &c.,* 53 E. C. L. R. 880; *Howard* v. *Gosset*, 59 Id. 359; *Birmingham* v. *Shaw*, Id. 868; *R.* v. *Bedwell*, 61 Id. 564–577, citing *Lowther* v. *Radner*, 8 East, 113; *Ryals* v. *R.*, 63 Id. 781; *Hirst* v. *Hannan*, 79 Id. 383; *R.* v. *St. George*, 82 Id. 519–526. See also Freeman on Judgments, §§ 127, 335; 7 Rob. R. 22 et seq. These authorities and many more might be cited from which we deduce these conclusions:

1. The judgment of a superior court of general jurisdiction is conclusive upon the parties to the cause, and cannot be impeached by evidence *aliunde* collaterally.

2. Where the judgment rests upon a jurisdiction, which must be determined by the court upon its own view of facts which go to constitute its jurisdiction, its decision in favor of its jurisdiction upon these facts is conclusive.

3. Such judgment is not void, but voidable, for it can be reviewed upon appeal, or impeached by *direct* assault for fraud or mistake by a party to the suit or one claiming under him.

4. No stranger to the record can collaterally impeach or avoid the effects of the same, unless his right pre-existed the proceeding, and was therefore impaired thereby.

5. No posterior right can be asserted to impeach the validity of the judgment, for it could not have been injured by it; and, *a fortiori*, no posterior right which is antagonistic to that of the party alleged to have been injuriously affected by the judgment.

6. Protection is always given to one who *bona fide* has purchased property under the judgment, which is sought to be avoided. The purchaser is only bound to look to the decree and no farther. 2 How. 340.

Two English cases have been cited against these views— *Mathey* v. *Wiseman*, 114 E. C. L. R. 657, and *Westoby* v. *Day*, 75 Id. 605. These do not conflict with our views.

The question arising in this case was decided in 47 Texas, 462. In this case there is the strongest reason for sustaining the conclusiveness of this decree. Benj. Martin is said to have died (by the evidence which was excluded) in 1825. If his heirs were injured by the sale of his land which has descended to them, they have failed to complain for nearly sixty years. Would a court of equity hear them after such a lapse of time? or could they recover against plaintiff or defendant in ejectment? But who are these who allege the injustice of decreeing away the title of heirs by a proceeding not against them but their dead ancestor? They are strangers in blood and estate. A court might well lend its ear to the protest of the heirs of the dead, but why to the enemy of the dead and his heirs? It is clear that this chancery court had jurisdiction by publication to sell this land. It had right to decide whether Martin was properly served. Its action was conclusive, unless reversed by appeal or set aside by decree at the instance of Martin or his heirs, and none other. That not being done, the decree is conclusive as to all *posterior* claims.

Wilson bought under that decree, for value without notice of defect. Robertson did the same. What rule of law or justice will let these defendants in ejectment, aliens in blood and estate, collaterally assail that decree and the title under it, more than forty years afterwards, for their own benefit and not for that of the wronged heirs of Martin. Every presumption is made in favor of such a decree. 1 Smith L. C. 840.

On the conclusiveness of the caveat :

1. The questions involved in caveat are not identical with those in ejectment, and therefore, on principle, judgment, if not clearly on merits, is not conclusive. *Chrisman* v. *Harman*, 29 Gratt. 496, and cases cited.

2. But there is no judgment on merits. It is not *retraxit* as insisted by plaintiff in error. Retraxit requires presence of party in court. *Wortham* v. *C. W.*, 5 Rand. 669 ; *Morse* v. *Farmer's Bank*, 27 Gratt. 252. On the last point, we think there is nothing in it.

*W. W. Gordon,* for defendant in error.

Where it appears from the record that process was served on defendant, or that he appeared in the suit, the fact can not be denied by plea. *Lincoln* v. *Tweed*, 2 McLean, 511. When judgment (if court of general jurisdiction) is silent as to facts necessary to confer jurisdiction, the law presumes the decision of the court in favor of jurisdiction to be right, and its final judgment is binding until reversed in appeal upon direct proceeding. *Seely* v. *Reid*, 3 Iowa, 374. When record of domestic judgment, if court of general jurisdiction, if subject matter comes collaterally in question in another court, and discloses nothing to the contrary, it will be presumed that the court had jurisdiction of the person and of the matter in controversy. 2 Read (Ten.), 253 ; 54 Texas, 540 ; 5 Missouri, 14; 75 Ind. 98 ; 4 Dana, 441; 27 Gratt. 618. If record shows no service, judgment is a nullity, but if not, it is presumed and cannot be questioned collaterally. 2 Am. L. Cases, 633, 635–6 ; 1 Ohio State Rep. 369 ; 8 Ohio St. 586. The records of domestic courts of general jurisdiction can only be contradicted where proceedings are instituted for the express purpose of setting them aside ; but records of all courts may be impeached if it can be done by inspection alone. 52 Me. 459 ; 37 Vermont, 158 ;

31 Ind. 455–6 ; 2 McLean, 514 ; 4 McLean, 452–6. Verity of decree reciting that order of publication was issued to party defendant, who was at time beyond limits of State, cannot be collaterally impeached by parol. *Lawlin's Heirs* v. *White*, 27 Tex. 250.

If judgment is not void on its face, it cannot be questioned collaterally. 4 Bibb. 336 ; 1 I. I. Mar. 199. Judgment rendered against a person after his death not void, but voidable, and not impeachable collaterally; still less can decree *in rem*, as order of sale be held void or impeachable collaterally when made after death of owner. *Yaple* v. *Titus*, 41 Pa. St. 195 ; 12 Neb. 558 ; 52 Vermont, 552, 592. Judgment in *scire facias* on mortgage returned *nihil*, followed by *alias sci.fa.*, and same return is not void, although defendant was dead when first writ issued, and sale by sheriff confers good title to purchaser. 4 Watts, 270. Judgment for or against dead persons cannot be attacked collaterally ; the record imports that he was living and cannot be collaterally impugned. *Carr* v. *Townsend*, 63 Pa. St. 202. The fact that the defendant died before rendition of the judgment is matter attacking the judgment and in a collateral proceeding, when interposed to defeat an action of traspass to try title to land, will not defeat the action. *Taylor* v. *Snow*, 47 Tex. 462, and the many cases cited therein by court and counsel.

As to inability to impeach collaterally, record of court of general jurisdiction, see *Caldwell* v. *Commonwealth*, 17 Gratt. 391; *Bassett* v. *Fisher*, 9 Leigh, 131–2 ; 14 Gratt. 229, and *Filbates* v. *Woodhouse*, 77 Va. 317, and Freeman on Judgments, § 153; *Ins. Co.* v. *Mays*, 103, U. S. 135. Strangers may impeach a judgment by direct proceedings for that purpose, but not all strangers; it is only those who, if the judgement were given full effect, would be prejudiced as to some pre-existing right. Freeman on Judgments, 335 ; and Bigelow on Frauds, 175. An outstanding title to avail

as defence (as is claimed here) must be a present subsisting and operative legal title in which the owner could recover if asserting it by action. Wait's Defence, p. 109.

But the evidence is inadmissible, because it is mere hearsay, showing upon its face that it came from persons who *did not* know and had no means of knowing. If the facts show that no part of the pedigree came from proper sources of information, the whole ought to be rejected. 1 Phil. Evi. 262; 8 Barn. and Cres. 813, and 9 B. Mon. 490; 6 Mon. 259, and see 4 Ran. 619. But besides all this it is respectfully submitted that even if the judgment were void, a *bona fide* purchaser for value without notice gets a good title under sale by decree of court. Freeman on Judgments, § 509, 33 N. J. Equity, 63.

LEWIS, P., delivered the opinion of the court.

This was an action of ejectment in the circuit court of Augusta county, removed thereto for trial from the circuit court of Alleghany county. The plaintiff claimed title to the land in controversy by deed from David I. Wilson, to whom it had been conveyed in 1840 by Thos. J. Stuart, commissioner of sale of the circuit superior court of law and chancery of Augusta county, acting under a decree of that court, in a suit begun therein, in 1829. The defendants claimed under Richard Wilcher, to whom a patent for the land was granted by the Commonwealth in 1852. At the trial the defendants sought to attack the plaintiff's title by the introduction of parol evidence to show that the decree under which his grantor claimed was void, on the ground that at the time the suit was brought, in which that decree was rendered, the defendant, Martin, was dead. The circuit court excluded the evidence, and the defendants excepted; and the question thus presented is the first question now to be considered.

Jurisdiction of the cause and parties is essential to the conclusiveness of a judgment or decree. To acquire jurisdiction of the defendant, it is necessary that in some appropriate way he be notified of the pendency of the suit. If upon inspection of the record, it appears that no such notice has been given, the judgment or decree is void. On the other hand, if it be a judgment or decree of a domestic court of general jurisdiction, and the record declares that notice has been given, such declaration cannot be contradicted by extraneous proof. In such cases, the judgment or decree is sustained, not because a judgment rendered without notice is good, but because the law does not permit the introduction of evidence to overthrow that which, for reasons of public policy, it treats as absolute verity. The record is conclusively presumed to speak the truth, and can be tried only by inspection. This results from the power of the court to pass upon every question which arises in the cause, including the facts necessary to the exercise of its jurisdiction, and as to which, therefore, its judgment, unless obtained by fraud or collusion, is binding until reversed on every other court. And especially is this so in respect to decrees under which sales are made to *bona fide* purchasers. If it were otherwise, if purchasers could be held responsible for the errors of the court, or could be required to look beyond the proceedings in the cause to find authority for the court to act, then such sales, as has well been said, would be but snares for honest men. This has often been held by the supreme court of the United States. In *Grignon's Lessee* v. *Astor*, 2 How. 319, referring to its former decisions on the subject, the court said: "They are founded on the oldest and most sacred principles of the common law. Time has consecrated them; the courts of the States have followed, and this court has never departed from them. They are rules of property, on which the repose of the country depends. Titles acquired under the

proceedings of courts of competent jurisdiction must be deemed inviolable in collateral action, or none can know what is his own." See also *Lancaster* v. *Wilson,* 27 Gratt. 624. In the present case the decree under which the sale to Wilson was made, was rendered by a court having jurisdiction of the subject matter of the suit, and the proceedings throughout are regular on their face. The defendant, Martin, was proceeded against as a person in being and as a non-resident of the State. An order of publication was accordingly made, and duly and regularly executed. Its effect, therefore, is equivalent to an averment on the record that he had in fact been summoned,—an averment which in *this* collateral proceeding cannot be contradicted. For, apart from what has already been said, the rights of those who seek to do so, claiming as they do under Wilcher, the patentee in the patent issued in 1852, were not only acquired long after the date of the decree, but are antagonistic to the rights of all the parties to the suit in which that decree was rendered. It is plain, therefore, that neither they, nor any under whom they claim, were prejudiced by that decree, and ought not now to be permitted to assail it.

Mr. Freeman, in his work on Judgments, § 335 (3d ed.), after referring to the right of strangers to impeach a judgment, and the grounds upon which the right is placed, says, "It must not, however, be understood that *all* strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment were given full credit and effect, would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment." This we think is the true doctrine—certainly in a case like this, where fraud or collusion is not alleged—and upon examination, it will be found that most of the cases relied on by the counsel for the plaintiffs in error do not at all conflict with this view. The testimony offered by the defendants was, therefore, rightly excluded.

The next question relates to the effect of the order of the circuit court of Alleghany county, entered on the 17th day of April, 1852, dismissing the *caveat* proceedings begun by Wilson, the grantor of the plaintiff, against Richard Wilcher. That order is as follows: "By consent of parties, and for reasons appearing to the court, ordered that this cause be dismissed." At the trial the defendants asked the court to instruct the jury that those proceedings were evidence of a disclaimer by Wilson of tenancy to him by Wilcher, and that the order therein was a bar to the prosecution of the plaintiff's action, if the jury should find that the land in controversy was embraced in those proceedings. The court refused to give the instruction as asked for, but did instruct the jury that those proceedings were evidence of a disclaimer by Wilson of tenancy to him by Wilcher. It is insisted by the plaintiffs in error that the order dismissing the *caveat* suit was in its nature and effect like a *retraxit,* or an order dismissing the case "agreed," and bars the plaintiff from maintaining any further action to recover the land embraced in that suit. It is well settled otherwise. In order that a judgment may constitute a bar to another suit, the point in controversy must be the same in both cases, and must in the first have been determined on its merits. 1 Greenl. Evid., sec's 529, 530 ; *United States* v. *Hughes,* 4 Wall. 232. An order simply dismissing the suit is not a determination on the merits, and so is not a bar to the maintenance of a second suit for the same cause of action. *Haldeman and others* v. *The United States,* 91 U. S. 584. And so it has been held by this court that an order dismissing a *caveat,* when not on the merits, is not conclusive of the controversy. *Hunter and others* v. *Hall,* 1 Call, 206. The instruction was, therefore, properly refused.

On the motion of the plaintiff, the following instruction was given to the jury: "If the jury believe from the evidence that John Oilver and Richard Wilcher and Peggy

Kirkpatrick and her brothers and sisters, or any of them, entered upon the land in controversy, or any part thereof, as squatters, but disclaiming any title to the land, and afterwards recognized the title of David I. Wilson thereto, they, or such of them as so entered and recognized his title, became thereby the tenants of the said Wilson; and said tenancy could not be ended by any disclaimer afterwards, unless said Wilson, or those entitled to the land claiming under him, had actual notice of such disclaimer, and no adversary possession by them, or any of them, could commence until after such disclaimer and actual notice had been given."

The giving of this instruction is the subject of the third and last bill of exceptions. While it is true that mere occupancy of land does not necessarily imply the relation of landlord and tenant, yet if the occupant acknowledge the title of the owner, and continue to occupy the land by his leave and license, he ceases to be a mere trespasser, and his possession is that of him whose title he has acknowledged. He cannot, therefore, by afterwards acknowledging the title of another be considered, consistently with good faith and fair dealing, to hold under the latter adversely to the former until after notice in some way to the claimant, or those claiming under him, whose title he first acknowledged. This is substantially the meaning of the instruction given, and the court did not err in giving it.

It is lastly insisted by the plaintiffs in error (citing *Duncan* v. *Helms,* 8 Gratt. 68), that it was incumbent on the plaintiff in the court below to show that the persons alleged in the bill, in the suit of Hudson and Wilson against Martin and others, to be the heirs at law of Robert Morris, were so in fact. The bill in that suit alleged that title to the land mentioned therein had probably been made by Benjamin Martin to Robert Morris in the lifetime of the latter, and accordingly certain persons alleged to be his

heirs-at-law were made parties defendant. But it does not appear that Martin ever conveyed to Morris, or that his heirs ever acquired any interest in the land in controversy. The circumstances of the case tend to sustain the contrary view. But however that may be, the alleged outstanding title in Morris' heirs, sought to be shown by the defendants to defeat the plaintiff's right of recovery, cannot avail for that purpose. An outstanding title to defeat the action must be a present, subsisting and operative legal title, on which the owner or owners could recover if asserting it by action. 3 Wait's Actions and Defences, 109, and cases cited. Such a title is not shown by the record in this case to be outstanding in Morris' heirs. And for the foregoing reasons we are of opinion that there is no error in the judgment, and that it must be affirmed.

JUDGMENT AFFIRMED.