GULFSTREAM BUILDING ASSOCIATES, INC., ET AL.

V.

LUCY KING BRITT, ET AL.

Record No. 881134

LUCY KING BRITT, ET AL.

V.

GULFSTREAM BUILDING ASSOCIATES, INC., ET AL.

Record No. 881158

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Harrison, Retired Justice

*Joseph L. Lyle, Jr. (Lyle, Siegel, Croshaw & Beale*, on briefs), for appellants. (Record No. 881134)

*Gary P. Arsenault (Cabell C. Mercer; Michael E. Grey; Courtney E. Mercer; Donald C. Grey; Mercer, Grey & Arsenault*, on brief), for appellees. (Record No. 881134)

*Gary P. Arsenault (Cabell C. Mercer; Michael E. Grey; Courtney E Mercer; Donald C. Grey; Mercer, Gray & Arsenault*, on brief), for appellants. (Record No. 881158)

*Joseph L. Lyle, Jr. (Lyle, Siegel, Croshaw & Beale*, on brief), for appellees. (Record No. 881158)

JUSTICE LACY delivered the opinion of the Court.

The parties to these appeals own adjoining parcels of real estate in the City of Virginia Beach. Gulfstream Building Associates, Inc. and Seagull Associates I (Gulfstream), own lot 5 as shown on the Newsome Farm subdivision plat. Lucy King Britt, Maurice C. and Delores C. Brinkley (the Brinkleys) own lot 7 as shown on the same plat.

The Brinkleys' predecessor in title, Daniel Sherman Smith, Jr. (Smith) occupied lot 7 since 1919. In 1960, because the Newsome Farm plat was poorly drawn, Smith and others executed and recorded a boundary line plat and agreement which clarified the boundaries of lots 1, 2, and 5, including the boundary between lots 5 and 7 (the Tarrall survey). The plat of the Tarrall survey was indexed in the plat index under the name of Newsome Farms.

Five years later, the Brinkleys sought to purchase lot 7 from Smith. To correct the deficiency in his title, Smith instituted an adverse possession suit. In an uncontested proceeding, Smith was awarded title to lot 7 by adverse possession. *Smith* v. *Violet Stone, et al.*, Chancery No. 9616. The trial judge relied on the result of a 1965 survey, the Riddick plat, for a metes and bounds description of lot 7. Because the Riddick survey conflicted with the Tarrall survey, the parcel Smith was awarded overlapped with lot 5, as shown on the Tarrall survey. No mention was made of

the Tarrall survey in the *Smith* v. *Stone* suit. Smith later conveyed lot 7 to the Brinkleys.

At the time of the *Smith* v. *Stone* suit, the Princess Anne County School Board (School Board) held title to lot 5, as it was shown on the Tarrall plat. The School Board was not made a party to the *Smith* v. *Stone* suit. Gulfstream, the School Board's successor in title, also took lot 5 under the Tarrall survey.

In 1984, the Brinkleys filed an action of ejectment against Gulfstream as to that portion of lot 5 which lies within lot 7 as described in the *Smith* v. *Stone* decree. In response, Gulfstream brought the present suit in chancery under Code § 8.01-428(C) to vacate the *Smith* v. *Stone* decree for fraud on the court. The ejectment action was stayed pending the outcome of this appeal.

At trial, the matter was referred to a commissioner in chancery. The commissioner found that Smith had committed extrinsic fraud on the court, by failing to reveal the existence of the Tarrall plat. The commissioner further found that the Brinkleys were on constructive notice of the Tarrall survey. In accordance with the commissioner's findings, the trial court declared that the metes and bounds description of lot 7 in the *Smith* v. *Stone* decree was "null, void, and of no effect" to the extent that it affected lot 5. Although the trial court agreed with the commissioner's constructive notice finding, it did not rule on the constructive notice issue in the final decree.

On appeal, Gulfstream assigns error to the trial court's failure to rule on the constructive notice issue. The Brinkleys also filed an appeal, arguing, *inter alia*, that Gulfstream is not a proper party to a suit to set aside the *Smith* v. *Stone* decree and that the trial court had insufficient evidence upon which to base its finding of extrinsic fraud. We first will address the Brinkleys' contentions.

## I.

Gulfstream, relying on the court's inherent equity power, and citing Code § 8.01-428(C), filed this suit to vacate the judgment in *Smith* v. *Stone* alleging that the judgment was obtained through fraud on the court. The Brinkleys maintain that Gulfstream has no standing to prosecute the present suit because equity generally will grant relief from a prior judgment only to one who was a party to the action which resulted in that judgment.

■ A non-party, however, may maintain a suit to set aside the allegedly damaging judgment if he has an interest which is jeop-

ardized by enforcement of the judgment and the circumstances support a present grant of relief. *Restatement (Second) of Judgments* § 76 (1982). The right of the non-party must have existed at the time the judgment was rendered. *Evans* v. *Asphalt Roads, Etc., Co.*, 194 Va. 165, 175-76, 72 S.E.2d 321, 327 (1952); *Wilcher* v. *Robertson*, 78 Va. 602, 617 (1884).

The Brinkleys suggest that to meet this standard the present claimant must have possessed the right prejudiced by the action at the time the judgment of which they complain was entered. The Brinkleys maintain, therefore, that Gulfstream did not have the requisite pre-existing right because it did not acquire title to lot 5 from the School Board until 1984.

■ In *Wilcher*, the plaintiffs traced their title to an 1840 deed of sale from a special commissioner based on litigation commenced in 1829. The defendants' title claim did not arise until 1852 when their predecessor, Richard Wilcher, received his patent from the Commonwealth. "It is plain, therefore, that neither [the defendants], nor any under whom they claim, were prejudiced by that decree. . . ." *Id.* at 617. In a case involving title to land, *Wilcher* only requires that the prejudiced right or interest have been in existence at the time of the judgment and that it belonged either to the present claimant *or* to his predecessor in interest.

■ The School Board's interest in lot 5 existed in 1966 and that interest is now owned by Gulfstream. The *Smith* v. *Stone* decree unquestionably prejudices and jeopardizes Gulfstream's right because it describes a portion of land claimed by Gulfstream as part of lot 5 as included in lot 7. Gulfstream satisfies the requirements of *Wilcher*.[1]

In addition to a showing of prejudice resulting from the *Smith* v. *Stone* judgment, Gulfstream must also show a need for equitable relief in this case. The Brinkleys contend that any prejudice resulting from the failure to include Gulfstream's predecessor in the 1966 litigation can be rectified in the pending ejectment action where Gulfstream will have "its day in court." We disagree.

■ Code § 8.01-428(C) specifically preserves the long-recognized right to bring an independent action in equity to relieve a party from the detrimental consequences flowing from an earlier judgment which allegedly resulted from fraud on the court. Gulf-

---

[1] We note that *Wilcher* implied a less stringent standard may be applied where "fraud or collusion" is alleged. 78 Va. at 617.

stream has demonstrated that its rights were prejudiced by the 1966 decree and it has met the test set out in *Wilcher*. Under the facts of this case, the Brinkleys' argument is simply not persuasive. As Gulfstream argues:

> Brinkley cannot now take refuge in the contention that the School Board's absence as a party in 1966 deprives Gulfstream of standing. It is precisely *because* the Board was not a party that the erroneous description was allowed to creep into Smith's decree in the first place.

We agree. The ejectment suit will resolve the title issues; however, Gulfstream should not be put to the task again of facing and overcoming the presumptive validity of the very decree at issue here. Therefore, we conclude that, under the facts of this case, Gulfstream is a proper party to maintain this suit.[2]

## II.

Next, the Brinkleys argue that the trial court incorrectly applied a preponderance of the evidence standard in finding extrinsic fraud in the *Smith* v. *Stone* suit. They also challenge the sufficiency of the evidence to support the trial court's ruling.

A finding of extrinsic fraud on the court must be supported by clear and convincing evidence. *Taylor* v. *County Board*, 189 Va. 472, 486, 53 S.E.2d 34, 40 (1949); *Barbour* v. *Barbour*, 155 Va. 650, 653, 156 S.E. 365, 366 (1931); *McClung* v. *Folks*, 126 Va. 259, 273, 101 S.E. 345, 349 (1919). And the trial court, although erroneously stating that the standard of proof for fraud in this context was a preponderance of evidence, nevertheless went on to say that "the evidence of Smith's fraud in any event was established by clear and convincing evidence." Thus, the error was harmless.

In challenging the sufficiency of the evidence to support a finding of extrinsic fraud, the Brinkleys argue that Gulfstream relied only upon the "sparse" record from the *Smith* v. *Stone* suit in an attempt to show extrinsic fraud. They point out that the record has "no transcript of the proceeding, few exhibits and only the Judge's notes as to who testified." The Brinkleys imply that the

---

[2] Based on this holding, we need not consider Gulfstream's contention that the School Board was a necessary party to the *Smith* v. *Stone* suit.

record is so "sparse" that it could not meet the required clear and convincing standard of proof. Yet they also argue that its brevity should not undercut the presumption of correctness which is accorded to court decrees. However, it is the quality, not the quantity, of the evidence which determines whether a particular standard of proof is met. To support a finding of extrinsic fraud, Gulfstream must prove that Smith engaged in conduct which prevented "a fair submission of the controversy to the court." *Jones* v. *Willard*, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983) (citations omitted).

In the present case there was ample evidence to support the trial court's finding that the *Smith* v. *Stone* controversy was not submitted fairly to the court. Smith offered the Riddick survey, which he knew to be contrary to the metes and bounds description in the Tarrall survey. He also failed to join the School Board, the one party who would likely have revealed the existence of the Tarrall survey and plat. Thus, the commissioner found, and the trial court concurred, that the result contained in the decree entered was due to the fact that Smith had withheld "a critical and important document" from the court in *Smith* v. *Stone*. Had Smith revealed the Tarrall survey, the *Smith* court would have been obligated to consider that survey in its description of lot 7. Had Smith joined the School Board, the suit would have been contested, rather than uncontested, with the likelihood that the Tarrall survey would have been introduced. The trial court did not err in affirming the commissioner in chancery's finding that Smith's actions, shown by clear and convincing evidence, constituted extrinsic fraud on the court.

## III.

Finally, we turn to Gulfstream's appeal, in which it argues that the trial court should have ruled, in accordance with the commissioner's findings, that the Brinkleys were on constructive notice of the Tarrall survey. The Brinkleys respond that, under Code § 8.01-610, the trial court was not required to accept every finding of the commissioner in chancery. Furthermore, they argue, the extension of equity power to legal matters is inappropriate here as the pending ejectment suit is the preferable forum for resolution of the issue of constructive notice.

Section 8.01-610 states:

> The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but *the court shall confirm or reject* such report in whole or in part, according to the view which it entertains of the law and the evidence.

(Emphasis added.) This section clearly gives the trial court substantial discretion in the manner in which it reviews the report of a commissioner. It does not, however, allow the trial judge simply to ignore the report or portions thereof. The report, or portions of it, can be disposed of with very general language. Under certain circumstances, silence can be interpreted as a rejection or affirmance of the report or parts of it. In this case, however, the trial judge, in discussing the Tarrall survey, stated that he believed the Brinkleys "knew about the situation or should have known about it." Yet he specifically declined to confirm or reject the commissioner's findings relating to constructive notice. This course of action is not recognized by Code § 8.01-610.

■ The circumstances of this case provide further basis for deciding the constructive notice issue here. While constructive notice is a legal rather than equitable matter, whether or not equity may afford legal relief must be evaluated on a case-by-case basis. *Walters* v. *Farmers Bank of Virginia*, 76 Va. 12, 18 (1881). The Brinkleys concurred with Gulfstream in requesting that the issue be contained in the decree of reference issued to the commissioner. At no time did the Brinkleys suggest the commissioner should not consider the issue and, indeed, it appears that the reference of the matter was not inappropriate. Having tried that issue and having lost before the commissioner, the Brinkleys now seek to be given a second opportunity to prevail on the issue in the ejectment suit. They identify, however, no other considerations to justify relitigating the question. Since the Brinkleys had a full and fair opportunity to raise the matter previously, we decline to require another hearing of the same issue.

For the reasons stated above we will affirm the judgment of the trial court in Record No. 881158. We will reverse the judgment of the trial court in Record No. 881134 and remand that case to the trial court for entry of a decree consistent with this opinion.

Record No. 881158 *Affirmed.*
Record No. 881134 *Reversed and remanded.*