# CIRCUIT COURT OF THE CITY OF NORFOLK

Semaj A. Alce

v.

Yvonne C. Edwards et al.

April 3, 2007

Case No. (Chancery) CH03-2447

BY JUDGE CHARLES E. POSTON

Today, the Court holds that its order of September 6, 2002, approving an infant settlement was procured by fraud and should be vacated.

The facts are relatively simple. Natashia Brown, mother of Semaj A. Alce, learned that she was pregnant in September, 2001. Alvin Alce, Jr., and Natashia had been acquainted with each other over a span of several years, and she knew that he was the child's father. Indeed, in October 2001, she and Alvin Alce, Jr., went to the home of Yvonne C. Edwards, mother of Alvin Alce, Jr., and told her about the pregnancy. Over the next few months, Natashia Brown and Edwards engaged in discussions about the pregnancy.

On December 9, 2001, Alvin Alce, Jr., died from injuries sustained in an automobile accident, and one month later, on January 10, 2002, Edwards qualified as the Administratrix of her son's estate. She then retained Curtis T. Brown, Esquire, to prosecute an action for the wrongful death of her son on behalf of his statutory beneficiaries. The exact date is uncertain, but it is clear

that, in February or March of 2002, Edwards advised Curtis T. Brown of Natashia Brown's pregnancy and, further, that Natashia Brown had named Alvin Alce, Jr., as the father of her unborn child.

In March of 2002, Edwards discussed Natashia Brown's pregnancy with Alvin Alce, Sr., father of Alvin Alce, Jr., during a telephone conversation. Alce, Sr., resided in Florida, and following the conversation with Edwards, he retained Donald E. Yates, Esquire, an attorney in Florida. He advised Yates of Natashia Brown's claim that his deceased son was the father of her unborn child. On March 12, 2002, Yates wrote Curtis T. Brown on behalf of Alce, Sr., and advised, in part, as follows:

> This letter will also serve to confirm that Alvin Alce, Jr., has an unborn child with a woman by the name of Natashia Brown, 712 Goose Creek Court, Virginia Beach, Virginia 23462. The child if born will be an heir to Alvin Alce, Jr.'s estate. Please accept this as formal notification of the potential heir.

Curtis T. Brown denies receipt of the letter, pointing to an irregularity in the address. The Court, however, is unconvinced by his denial when the facts of this case are viewed in their totality, and finds that he did receive the letter. The child, Semaj Alce, was born on May 25, 2002.

A claim was filed on behalf of the estate with Geico Insurance Company, and on May 30, 2002, Curtis T. Brown responded to a questionnaire from Lisa S. Hodges, Esquire, staff counsel for Geico. In that response, he advised that there was only one statutory beneficiary of the estate of Alvin Alce, Jr., his daughter, Ayana Monet Alce, whose mother is Winter Monet Jubilee. Although he knew that Natashia Brown claimed Alce, Jr., had fathered her son, Curtis T. Brown did not inform Geico about Semaj Alce. A petition to approve an infant settlement, naming only Ayana Monet Alce as a child of Alce, Jr., reached the Court on July 22, 2002. The filing of this petition resulted in a hearing on August 2, 2002, attended by Edwards and Curtis T. Brown, during which the court considered the petition. Both of them had actual knowledge of Semaj's potential claim, yet neither advised the Court of Semaj Alce's existence nor of his potential claim. Furthermore, no attempt to notify Natashia Brown of the filing of this petition was made by either Curtis T. Brown or Edwards.

The Court granted the relief sought in the petition to approve an infant settlement and entered an order on September 6, 2002, approving a settlement in the sum of $100,000 with provision for payment of $33,333.00 to Curtis T. Brown as his attorney's fee. After deduction of permissible charges on the

settlement amount, the order provided that the balance would be used to purchase a structured annuity for Alce, Jr.'s first child, Ayana Monet Alce; however, the order made no provision for Semaj.

In June of 2002, Natashia Brown filed in the Virginia Beach Juvenile and Domestic Relations District Court a petition for custody of Semaj and for a determination that Alce, Jr., was his father. She gave no notice of the filing of this action to Edwards, but on September 9, 2002, she told Edwards that a hearing had been scheduled for the following day. Edwards promptly notified Curtis T. Brown, and both of them appeared at the hearing on September 10, 2002, at which time they learned that a paternity test had confirmed that Alce, Jr., was indeed Semaj's father.

The same Juvenile Court conducted a hearing on the issue of paternity on November 19, 2002, at which no evidence was presented by or on behalf of Edwards. That court then entered an order granting Natashia Brown custody of Semaj and finding that "Child's father, Alvin Alce, Jr., is deceased. DNA testing by LabCorp proved he was father of the child."

On October 19, 2004, Semaj Alce ("Plaintiff"), through his mother and next friend, Natashia Brown, filed an amended complaint with this Court seeking to vacate the order of September 6, 2002, on the grounds that the defendants, Curtis T. Brown and Yvonne Edwards, fraudulently withheld information from both her and the Court. The complaint requests that the Court enter an order including Semaj Alce as a statutory beneficiary of Alce, Jr.'s estate and directing the annuity owner to allocate payments to, or for the benefit of, Semaj Alce. Moreover, the amended complaint prays that Curtis T. Brown be compelled to forfeit his attorney's fees gained from the settlement proceedings and to pay costs associated with this litigation resulting from his alleged fraudulent behavior.

Virginia courts have limited powers to vacate orders under the provisions of Va. Code § 8.01-428. Specifically, Va. Code § 8.01-428(D) grants a court authority to "entertain at any time an independent action . . . to set aside a judgment or decree for fraud upon the court." *Id.* Furthermore, "[a] non-party may . . . maintain an independent action under § 8.01-428(D) for relief from a judgment or decree allegedly procured by fraud on the court if the non-party had an interest that is jeopardized by that prior judgment or decree." *Gulfstream Bldg. Assocs. v. Brill*, 239 Va. 178, 182, 387 S.E.2d 488, 490 (1990) (citations omitted). Although Plaintiff was not a party to the infant settlement petition, he certainly has standing to bring an action under § 8.01-428(D) because his interests were jeopardized by the challenged order.

Va. Code § 8.01-428(D) is merely an incarnation of longstanding equitable principles. *See, e.g. Charles v. Precision Tune, Inc.*, 243 Va. 313 (1992). The specific elements that govern the type of equitable action embodied by Va. Code § 8.01-428 are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Id.* at 317-18.

The order of September 16, 2002, is unquestionably one that "equity and good conscience" should not enforce. The order excludes a rightful beneficiary, an infant, from sharing in Alce, Jr's estate. Moreover, the order, as it now stands, would allow Alce, Jr.'s first child to profit unjustly from the Plaintiff's exclusion. These consequences of the challenged order are clearly at direct odds with the tenets of "equity and good conscience," and cannot, in equity, be enforced by the Court.

The second element, which requires "a good defense to the alleged cause of action on which the judgment is founded," is obviously present. There is no doubt, that, had Plaintiff's existence and the related paternity issue been brought to the Court's attention when it entered the order, the order surely would have reflected the infant Plaintiff's right to share in the wrongful death settlement. Consequently, the Court would not have entered the order as it stands today, and thus this absence of notice to the Court constitutes a "good defense" to the infant settlement petition and the resulting order.

Furthermore, there is no evidence that Plaintiff, through his next friend, Natashia Brown, was "at fault" or "negligent." Indeed, Plaintiff, by virtue of his age, cannot be at fault. Thus Plaintiff should not be estopped from asking the Court to vacate the order. Plaintiff had no notice of the settlement at the time the order was entered and, thus, could not have been negligent in asserting his rights as a statutory beneficiary. No "adequate remedy at law" exists to rectify the exclusion of Plaintiff from sharing in the settlement proceeds.

The element at the heart of this dispute is fraud, and specifically, whether an act of fraud prevented the infant Plaintiff from asserting his right to share in the settlement proceeds as a statutory beneficiary. Generally,

"[f]raud consists of a false representation of a material fact, made intentionally and knowingly, with the intent to mislead, upon which the defrauded person relies to his detriment." *Peet v. Peet*, 16 Va. App. 323, 326 (1993) (citing *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984); *Batrouny v. Batrouny*, 13 Va. App. 441, 443 (1991)). Of particular relevance is the premise that "[*c*]*oncealment* of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud. . . ." *Spence v. Griffin*, 236 Va. 21, 28-29 (1988) (emphasis added). It is certainly true that "few courts have discussed the factors that must be proven when deciding whether a fraud has been committed upon a court." *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 142 (1992). Nevertheless, when determining whether fraud has been committed upon a court, "a controlling factor is 'whether the misconduct tampers with the judicial machinery and subverts the integrity of the court itself'." *Id.*

The Court finds, by clear and convincing evidence, that the acts of Curtis T. Brown and Yvonne Edwards were fraudulent – fraudulent with respect to both the Court and to Natashia Brown. The Court finds that, in March 2002, Curtis T. Brown knew of Natashia Brown's pregnancy and her claim that Alce, Jr., was the father of her unborn child. Further, the Court finds that Edwards possessed this knowledge as early as October 2001. Neither advised the Court of Natashia Brown's pregnancy, of her assertion that Alce, Jr., was the father, or of Semaj's birth. Even if one accepted Curtis T. Brown's denial of knowledge of Natashia Brown's claims – denials the Court has rejected – there can be no doubt that, on September 10, 2002, he gained actual knowledge that Alce, Jr., had fathered a second child. Only eight days before, this court had approved an infant settlement without any knowledge of Semaj's existence. Curtis T. Brown, if he had known nothing of Semaj's existence earlier, was duty-bound to advise the Court of Semaj's status as Alce, Jr.'s child while that order remained in the breast of the Court.

At no time did Edwards or Curtis T. Brown advise the court of Natashia Brown's claim of paternity or of Semaj's birth. Their actions, or lack thereof, resulted in further litigation and expense to vindicate Semaj's rights as Alce, Jr.'s child. They both misrepresented material facts, namely Natashia Brown's pregnancy and her claim that Alce, Jr., was the father of her unborn child; the subsequent birth of the child; and the results of the paternity test and findings of the Virginia Beach General District Court. By not advising the Court of these facts, they, in fact, represented that Ayana Monet Alce was Alce, Jr.'s only heir, an obvious misrepresentation. These misrepresentations were made knowingly with the intent to deceive both Geico and the Court.

Moreover, these acts were done with the intent to prevent Natashia Brown from learning of the infant settlement agreement. This Court finds, by clear and convincing evidence, that Edwards and Curtis T. Brown deliberately concealed the pending wrongful death claim and related settlement petition from Natashia Brown. This concealment is unequivocally a material misrepresentation intentionally designed to prevent Plaintiff from rightfully sharing in the settlement proceeds.

The resulting damages, of course, are the expenses incurred in vindicating Semaj's rights and modifying the infant settlement to include Semaj. Indeed, the Court finds by clear and convincing evidence that the actions of Edwards and Curtis T. Brown constituted a calculated effort to direct the proceeds of the wrongful death settlement to a single, preferred beneficiary to the exclusion of Semaj, a rightful beneficiary to Alce, Jr.'s estate, and that their actions constituted fraud.

The final issue is whether the fraud perpetrated by Curtis T. Brown and Yvonne Edwards is the type of fraud that can serve to void and vacate this Court's order of September 6, 2002. "Generally, a judgment or decree rendered by a court having jurisdiction over the parties and subject matter must be challenged by direct appeal and cannot be attacked collaterally. *Peet v. Peet*, 16 Va. App. 323, 326 (1993). Yet, a judgment or decree may be set aside on proof of fraud if the "fraud is extrinsic or collateral to the matter tried by the first court." *Powell v. Commonwealth*, 133 Va. 741, 754 (1922). In other words, only when fraud is extrinsic or collateral in nature can an attack like Plaintiff's serve to void and vacate a court's final judgment once a court has lost its general jurisdiction to modify or vacate that judgment:

> The judgment of a court, procured by *intrinsic* fraud, i.e., by perjury, forged documents, or other incidents of trial related to issues material to the judgment, is voidable by direct attack at any time before the judgment becomes final; the judgment of a court, procured by *extrinsic* fraud, i.e., by conduct which prevents a fair submission of the controversy to the court, is *void* and subject to attack, direct or collateral, at any time.

*Jones v. Willard*, 224 Va. 602, 607 (1983) (emphasis in original).

" 'Intrinsic fraud' includes perjury, use of forged documents, or other means of obscuring facts presented before the court and whose truth or falsity as to the issues being litigated are passed upon by the trier of fact." *Peet*, 16 Va. App. at 326 (citing *Jones*, 224 Va. at 607). "By contrast extrinsic fraud" consists of 'conduct which prevents a fair submission of the controversy to the court'

and, therefore, renders the results of the proceeding null and void." *Id.* "A collateral challenge to a judgment obtained by extrinsic fraud is allowed because such fraud perverts the judicial processes and prevents the court or non-defrauding party from discovering the fraud through the regular adversarial process." *Id.*

The fraudulent acts of Curtis T. Brown and Yvonne Edwards were clearly designed to prevent a fair submission of the controversy to this Court. While the acts could be constituted "obscuring facts presented before the court," they also unquestionably served to prevent Plaintiff, through his next friend, from asserting his rights before the Court. Indeed, the calculated failure to inform Natashia Brown of the pending wrongful death action and resulting settlement petition denied her the opportunity to show the Court the full scope of the settlement's implications. In addition, Curtis T. Brown's intentional failure to inform the Court of an additional infant beneficiary when before the Court on an infant settlement petition is a material omission that undermined both the Court's ability to evaluate fairly the settlement and to ensure all interested parties were before it. Therefore, because the fraud prevented a fair submission of the infant settlement petition to the Court, the fraudulent acts were extrinsic in nature, voiding the Court's order of September 6, 2002. The Court will accordingly vacate that order.

Edwards received no financial gain from this fraud. She was motivated by a desire to have the proceeds of her son's death distributed to her granddaughter, Ayana Monet Alce. To the extent that she is able, Edwards has stated that she is prepared to correct the results of the fraud.

Curtis T. Brown, in contrast, did profit from his fraudulent acts in the sum of $33,333.00. He has shown no willingness to take any action to remedy the fraud he perpetuated. The Plaintiff has proposed that the Court deal with this inequity by imposing a constructive trust on the fees that Curtis T. Brown obtained through his fraud. "Constructive trusts are those which the law creates, independently of the intention of the parties, to prevent *fraud or injustice*." *Leonard v. Counts*, 221 Va. 582, 589 (1980) (citing *Porter v. Shaffer*, 147 Va. 921, 928 (1926)). "Constructive trusts arise, independently of the intention of the parties, by construction of law; being fastened upon the conscience of him who has the legal estate, in order to prevent what otherwise would be a fraud." *Id.* (quoting 1 *Minor on Real Property* § 462 at 616 (2d ed. Ribble 1928)).

The situation here plainly is one in which a constructive trust should apply. The Court cannot, in good conscience, allow Curtis T. Brown to retain a profit he obtained through his calculated fraud. Moreover, the profit Curtis

T. Brown wrongfully procured diminished the settlement proceeds available, at the very least, to pay Plaintiff's obligations to his counsel for advocating his right to share in the settlement proceeds. Thus, injustice will be prevented only if Brown is compelled to hold the profit in trust for the benefit of Semaj and his counsel.

The Plaintiff seeks judgment in the sum of $16,666.50 for attorney's fees plus the costs expended on her behalf. The Court, then, will impose a constructive trust in the sum of $16,666.50, with interest from September 6, 2002, to be held for the benefit of Plaintiff's counsel, plus the costs expended on the Plaintiff's behalf in the action at bar.

The Court will enter a judgment, in favor of the infant Plaintiff, for the amount upon which the constructive trust is imposed, and an additional sum for all costs Plaintiff incurred from this litigation. Plaintiff is requested to submit a statement of costs to the Court within fifteen days, after which the Court will determine the amount of costs to be included in the judgment.

Plaintiff shall proceed in a manner consistent with the conclusions listed herein, including drafting and submitting the order reflecting these conclusions. The order to be submitted shall also restore to the Court's docket CL02-1658, the case concerning original settlement petition.