## JOHNSON *v.* MUELBERGER.

No. 296.  Argued January 4, 1951.—Decided March 12, 1951.

*William E. Leahy* argued the cause for petitioner. With him on the brief was *William J. Hughes, Jr.*

*Saul Hammer* argued the cause for respondent.  With him on the brief was *Louis Flato.*

MR. JUSTICE REED delivered the opinion of the Court.

The right of a daughter to attack in New York the validity of her deceased father's Florida divorce is before us. She was his legatee. The divorce was granted in Florida after the father appeared there and contested the merits. The issue turns on the effect in New York under these circumstances of the Full Faith and Credit Clause of the Federal Constitution.

Eleanor Johnson Muelberger, respondent, is the child of decedent E. Bruce Johnson's first marriage. After the death of Johnson's first wife in 1939, he married one Madoline Ham, and they established their residence in New York. In August 1942, Madoline obtained a divorce from him in a Florida proceeding, although the undisputed facts as developed in the New York Surrogate's hearing show that she did not comply with the jurisdictional ninety-day residence requirement.[1] The New York Surrogate found that

> "In the Florida court, the decedent appeared by attorney and interposed an answer denying the wrongful acts but not questioning the allegations as to residence in Florida. The record discloses that testimony was taken by the Florida court and the divorce granted Madoline Johnson. Both parties had full opportunity to contest the jurisdictional issues in that court and the decree is not subject to attack on the ground that petitioner was not domiciled in Florida."

---

[1] "In order to obtain a divorce the complainant must have resided ninety days in the State of Florida before the filing of the bill of complaint." Fla. Stat. Ann., 1943, § 65.02. This has been construed to require residence for the ninety days immediately preceding the filing date. *Curley* v. *Curley*, 144 Fla. 728, 198 So. 584. Madoline arrived in Florida from New York in June, and filed a bill of complaint on July 29.

In 1944 Mr. Johnson entered into a marriage, his third, with petitioner, Genevieve Johnson, and in 1945 he died, leaving a will in which he gave his entire estate to his daughter, Eleanor. After probate of the will, the third wife filed notice of her election to take the statutory one-third share of the estate, under § 18 of the New York Decedent Estate Law. This election was contested by respondent daughter, and a trial was had before the Surrogate, who determined that she could not attack the third wife's status as surviving spouse, on the basis of the alleged invalidity of Madoline's divorce, because the divorce proceeding had been a contested one, and "[s]ince the decree is valid and final in the State of Florida, it is not subject to collateral attack in the courts of this state."

The Appellate Division affirmed the Surrogate's decree *per curiam,* 275 App. Div. 848, but the New York Court of Appeals reversed. 301 N. Y. 13, 92 N. E. 2d 44. The remittitur remanded the case to the Surrogate "for further proceedings not inconsistent with" the opinion of the Court of Appeals. But in light of the record before us we assume that the requirement of Florida for a residence of 90 days as a jurisdictional basis for a Florida divorce is no longer open as an issue upon return of these proceedings to the Surrogate's Court. Accordingly the judgment under review is a final decree.

The Court of Appeals held that the Florida judgment finding jurisdiction to decree the divorce bound only the parties themselves. This followed from their previous opportunity to contest the jurisdictional issue. As the court read the Florida cases to allow Eleanor to attack the decree collaterally in Florida, it decided she should be equally free to do so in New York. The Court of Appeals reached this decision after consideration of the Full Faith and Credit Clause. Because the case involves important

issues in the adjustment of the domestic-relations laws of the several states, we granted certiorari, 340 U. S. 874.

The clause and the statute prescribing the effect in other states of judgments of sister states are set out below.[2] This statutory provision has remained substantially the same since 1790. 1 Stat. 122. There is substantially no legislative history to explain the purpose and meaning of the clause and of the statute.[3] From judicial experience with and interpretation of the clause, there has emerged the succinct conclusion that the Framers intended it to help weld the independent states into a nation by giving judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum.[4] The faith and credit given is not to be niggardly but generous, full.[5] "[L]ocal policy must at times be required to give way, such 'is part of the price of our federal system.' "[6]

---

[2] U. S. Const., Art. IV, § 1:

"Section. 1. Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

28 U. S. C. § 1738:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

[3] Jackson, Full Faith and Credit—The Lawyer's Clause of the Constitution, 45 Col. L. Rev. 1.

[4] Sherrer v. Sherrer, 334 U. S. 343, 355, and cases cited; Williams v. North Carolina, 317 U. S. 287, 301, 303; Riley v. New York Trust Co., 315 U. S. 343, 348–349.

[5] Davis v. Davis, 305 U. S. 32, 40.

[6] Sherrer v. Sherrer, supra, 355.

This constitutional purpose promotes unification, not centralization. It leaves each state with power over its own courts but binds litigants, wherever they may be in the Nation, by prior orders of other courts with jurisdiction.[7] "One trial of an issue is enough. 'The principles of res judicata apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties."[8] The federal purpose of the clause makes this Court, for both state and federal courts,[9] the "final arbiter when the question is raised as to what is a permissible limitation on the full faith and credit clause."[10]

In the exercise of this responsibility we have recently restated the controlling effect of the clause on state proceedings subsequent to divorce decrees in other states. In Davis v. Davis, 305 U. S. 32, we held that a Virginia decree of divorce, granted a husband who had acquired local domicile after he had obtained a decree of separation in the District of Columbia, the marital domicile, must be given effect in the District. The wife had entered her appearance in the Virginia court and was held bound by its findings of jurisdiction, after contest. In two cases, Williams I and II, 317 U. S. 287, and 325 U. S. 226, we held that domicile of one party to a divorce creates an adequate relationship with the state to justify its exercise of power over the marital relation, 317 U. S. at 298; 325 U. S. at 235. The later Williams case left a sister state free to determine whether there was domicile of one party in an "ex parte" proceeding so as to give the court jurisdiction to enter a decree. 325 U. S. at 230, n. 6, 237,

---

[7] Davis v. Davis, supra, 41.

[8] Treinies v. Sunshine Mining Co., 308 U. S. 66, 78.

[9] Mills v. Duryee, 7 Cranch 481, 485.

[10] Williams v. North Carolina I, supra, 302.

dissent 277; *Esenwein* v. *Commonwealth,* 325 U. S. 279, 281. Cf. *Rice* v. *Rice,* 336 U. S. 674.

Three years later a question undecided in *Williams II* was answered. In *Sherrer* v. *Sherrer,* 334 U. S. 343, a Florida divorce, where both parties appeared personally or by counsel, was held by Massachusetts not to be entitled to full faith or credit in that state because both parties lacked Florida domicile.[11]   320 Mass. 351, 358, 69 N. E. 2d 801, 805.   We reversed, saying:

"We believe that the decision of this Court in the *Davis* case and those in related situations are clearly indicative of the result to be reached here. Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." Pp. 351–352. And cf. pp. 355–356.[12]

---

[11] This was a proceeding where the former husband sought permission, under Mass. Gen. Laws (Ter. ed.), c. 209, § 36, to convey real estate as if he were sole, because living apart from his wife for justifiable causes.

[12] The dissent highlights the ruling: "But the real question here is whether the Full Faith and Credit Clause can be used as a limitation on the power of a State over its citizens who do not change their domicile, who do not remove to another State, but who leave the State only long enough to escape the rigors of its laws, obtain a divorce, and then scurry back. To hold that this Massachusetts statute contravenes the Full Faith and Credit Clause is to say that that State has so slight a concern in the continuance or termination of the marital relationships of its domiciliaries that its interest may be foreclosed by an arranged litigation between the parties in which it was not represented." Pp. 362–363.

*Coe* v. *Coe,* 334 U. S. 378; cf. *Estin* v. *Estin,* 334 U. S. 541.

It is clear from the foregoing that, under our decisions, a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree. Such an attack is barred where the party attacking would not be permitted to make a collateral attack in the courts of the granting state. This rule the Court of Appeals recognized. 301 N. Y. 13, 17, 92 N. E. 2d 44, 46. It determined, however, that a "stranger to the divorce action," as the daughter was held to be in New York, may collaterally attack her father's Florida divorce in New York if she could have attacked it in Florida.

No Florida case has come to our attention holding that a child may contest in Florida its parent's divorce where the parent was barred from contesting, as here, by *res judicata. State ex rel. Willys* v. *Chillingworth,* 124 Fla. 274, 168 So. 249, on which the Court of Appeals of New York relied, does not so hold. That case was a suggestion for a writ of prohibition filed in the Supreme Court of Florida to prohibit a lower court of record from proceeding on a complaint filed by Willys' daughter that her stepmother's divorce from a former husband was fraudulently obtained. Therefore, it was alleged, her stepmother's marriage to Willys was void and the stepmother had no right or interest as widow in Willys' estate. The writ of prohibition was granted because of improper venue of the complaint. The two opinions intimated that a daughter, as heir, could represent a deceased father in an attack on a stepmother's former divorce.[13] Neither of the opin-

---

[13] 124 Fla. at 278, 168 So. at 251:

"The rule is settled in this State that respondent being heir to her father's estate has a right to question the validity of his marriage to

ions nor any of the Florida cases cited cover any situation where the doctrine of *res judicata* was or might be applied. That is, neither Willys nor his daughter was a party to the stepmother's divorce proceedings. If the laws of Florida should be that a surviving child is in privity with its parent as to that parent's estate, surely the Florida doctrine of *res judicata* would apply to the child's collateral attack as it would to the father's.[14] If, on the other hand, Florida holds, as New York does in this case, that the child of a former marriage is a stranger to the divorce proceedings,[15] late opinions of Florida indicate that the child would not be permitted to attack the divorce, since the child had a mere expectancy at the time of the divorce.

In *deMarigny* v. *deMarigny*, 43 So. 2d 442, a second wife sought to have the divorce decree of the first marriage declared invalid. The Supreme Court of Florida held that the putative wife, being a stranger, without then existing interest, to the divorce decree, could not impeach it. It quoted with approval 1 Freeman on Judgments (5th ed.) 636, § 319:

> "It is only those strangers who, if the judgment were given full credit and effect, would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause nor

---

petitioner. Rawlins v. Rawlins [18 Fla. 345], and Kuehmsted v. Turnwall [103 Fla. 1180, 138 So. 775], *supra*." This observation was not directed at circumstances where *res judicata* could bind the parent.

[14] We find nothing in the Florida cases to cause us to question the application of the general rule that *res judicata* applies between parties both of whom appeared in prior litigation. See *Sherrer* v. *Sherrer*, 334 U. S. 343, 349, n. 11.

[15] See Note, Standing of Children to Attack Their Parents' Divorce Decree, 50 Col. L. Rev. 833.

appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition." P. 447.

See also *Gaylord* v. *Gaylord,* 45 So. 2d 507. The *de-Marigny* case also refused to permit the putative wife to represent the state in an effort to redress an alleged fraud on the court.

We conclude that Florida would not permit Mrs. Muelberger to attack the Florida decree of divorce between her father and his second wife as beyond the jurisdiction of the rendering court. In that case New York cannot permit such an attack by reason of the Full Faith and Credit Clause. When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit Clause forbids.

*Reversed.*

Mr. Justice Frankfurter dissents, substantially for the reasons given in the opinion of the New York Court of Appeals, 301 N. Y. 13, 92 N. E. 2d 44, in light of the views expressed by him in *Sherrer* v. *Sherrer* and *Coe* v. *Coe,* 334 U. S. 343, 356.

Mr. Justice Minton took no part in the consideration or decision of this case.