# Staunton

## MAE LAWSON EVANS v. ASPHALT ROADS & MATERIALS COMPANY, INCORPORATED, ET ALS.

September 10, 1952.

Record No. 4007.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Robert Lewis Young* and *Steingold & Steingold,* for the appellant.

*Rixey & Rixey, Lawson Worrell, Jr.* and *Williams, Cocke & Tunstall,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

The major question to be determined in this case is whether, in a hearing before the Industrial Commission of Virginia to

ascertain the dependents of a deceased employee, Virginia Workmen's Compensation Act, Code of Virginia, 1950, chapter 7, sections 65-89, *et seq.*, a minor son of a deceased employee, Roy N. Evans, had the right to attack the validity of a divorce granted his father in the State of Nevada. The issue turns on the effect in Virginia of the Full Faith and Credit Clause of the Federal Constitution, Article IV, § 1, and the Act of Congress in pursuance thereof, 28 U. S. C. § 1738, 28 U. S. C. A. § 1738.*

If the answer is in the negative we do not reach other questions in the case.

On November 6, 1950, Roy N. Evans, an employee of Asphalt Roads & Materials Company, Incorporated, was killed in an accident arising out of and in the course of his employment. Unable to reach an agreement with his employer, Mae Lawson Evans, claiming compensation as his widow, applied to the Industrial Commission of Virginia for a hearing. Code of Virginia, 1950, § 65-91. A hearing was held before W. F. Robinson, Chairman of the Commission. Appearing at the hearing, as claimants, were the appellant and Sallie G. Evans, on behalf of her son, Kiah Evans, a minor child of the deceased employee, and the employer of the deceased, with its insurance carrier. It was agreed that the only question was that of determining the names of the persons entitled to receive compensation as dependents of the deceased.

There was introduced in evidence a certificate showing the marriage of Sallie G. Evans to the deceased in Texas in February, 1925, and a birth certificate of Kiah Evans, a child born of their marriage on July 28, 1936. It was admitted that two other children of that marriage were over eighteen years of age and not entitled to compensation. It was also admitted that Mrs. Sallie G. Evans obtained an absolute divorce in North Carolina, upon constructive service of process, from Roy N.

---

* U. S. Const. Art. IV, § 1: "Section 1. Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State. And the Congress may by general laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the effect thereof."

28 U. S. C. § 1738, 28 U. S. C. A. § 1738: "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

Evans in June, 1947. The decree gave her the custody and control of the children.

Mae Lawson Evans, being sworn as a witness, presented a certificate of her marriage to Roy N. Evans on October 19, 1946, in the county of Washoe, Nevada, a certified copy of a decree of absolute divorce from her husband Floyd Smith, and a certified copy of a decree of absolute divorce of Roy N. Evans from Sallie Evans, together with authenticated copies of the proceedings in each case. Both divorce decrees were entered on September 11, 1946, by the Second Judicial Court of the State of Nevada, in and for the County of Washoe. Appellant testified that after her marriage to Evans, she lived with him until his death. She then rested her case.

The authenticated copies of the divorce proceedings show that Mae Lawson Smith on June 25, 1946, and Evans on July 8, 1946, filed suits for divorce in the named court, in Reno, Nevada, against their respective spouses. In each case service by publication was had by publication of the summons in a Reno newspaper and by mailing a copy of the summons and complaint to the last known post office address stated in the affidavit for the order of publication and summons. Neither of the defendants entered an appearance, nor were they served with process.

In the Evans' case, the evidence taken by depositions showed that he had been personally present in Reno, Nevada, since August 22, 1945; that he came there with the intention of making Nevada his residence for an indefinite period; that that intention remained with him; and supported the allegations of his complaint entitling him to a divorce. He obtained a decree, the court finding that he was a *bona fide* resident of Nevada and entitled to an absolute divorce from the defendant "upon the ground of extreme cruelty, mental in character."

In the case of the appellant, the depositions support her allegations as to residence in Nevada, and the allegations of her bill of complaint. The court granted her an absolute decree of divorce upon the ground of separation for more than three consecutive years, and awarded her the custody of her two children.

In the case of Evans, the appellant testified that she personally knew that Roy Evans had resided in Nevada since August

22, 1945. In the case of appellant, the testimony as to her residence in Nevada was corroborated by her daughter.

It will be noted that each proceeding was brought ten months after the complainants arrived in Nevada. In Nevada an actual and *bona fide* residence and domicile of six weeks in the State is required before suit can be maintained for divorce.

In each case it appears from the record of the proceedings therein that the Nevada court, a court of competent authority, had jurisdiction of the respective complainants and the subject matter of the cases. No attack is made upon the form and nature of the substituted service as failing to meet the requirements of due process, nor that there was a failure to follow procedural processes in any respect.

Appellees contended before the hearing Commissioner that the Nevada decrees were void for lack of jurisdiction because of falsity of the testimony of the appellant and Evans as to their residence in Nevada, and by reason of fraud in obtaining orders for publication of service of process. In support, they presented evidence tending to show that the appellant and Evans went to Nevada merely for the purpose of obtaining the decrees, with no intention of making that State their *bona fide* residence, and that in their respective affidavits for orders of publication of service of process each of them knowingly stated a false last known place of address of each defendant spouse.

After the case was heard by the hearing Commissioner and before his award, appellant filed a petition making certain legal contentions and asked to be permitted to produce further evidence as to the validity of her marriage to Evans, on the ground that she did not anticipate the necessity of producing evidence to meet an attack on its validity at the time of the hearing. The hearing Commissioner, refusing her request, on August 27, 1951, held that the Nevada divorces were null and void because of fraud, in that the complaining parties had not established domicile in that State, and the Nevada court was without jurisdiction. He ruled that the appellant was not the lawful wife of Roy Evans at the time of his accident, and entered an award in favor of Kiah Evans as sole dependent.

Appellant asked for a review before the full Commission. The matter came on for review on September 25, 1951, at which time appellant filed a supplemental petition, accompanied by

affidavits, asking the Commission to remand the case to the hearing Commissioner, with leave to introduce evidence as to her status as the lawful widow of Evans and as a person totally dependent on him as a matter of fact. The prayers of the original and supplemental petitions were denied, and on December 19, 1951, the full Commission affirmed the findings of fact and conclusions of law by the hearing Commissioner and the award entered thereon. We awarded this appeal.

As we proceed it is well to note that Sallie G. Evans is not a party to this proceeding. She appeared only in behalf of her son, Kiah Evans, claimant. Her divorce obtained in North Carolina in 1947, bars her from participation in any compensation benefits.

In view of the particular issue under discussion, that is, what effect we must give, under the Full Faith and Credit Clause of the Constitution, to the judicial proceedings of Nevada, it has not been necessary to set out in detail evidence of fraud. in matters on which the divorce decrees were rendered. Our primary considerations are: first, whether the divorce decrees are absolutely void or merely voidable; and, second, if merely voidable, whether they are subject to collateral attack by the appellees.

For many years the courts have found the question of what effect is to be given in one state to a divorce decree granted in another a burdensome problem. In the earlier decisions of the Supreme Court of the United States we find a series of divided and discordant opinions, especially where the decree was rendered upon constructive service of process, and where there was no appearance by the defendant spouse. *Johnson* v. *Muelberger,* 340 U. S. 581, 71 S. Ct. 474, 95 L. ed. 552, to which we shall hereafter refer, seems to settle much of the diversity of opinion.

█ It is well settled that each state has exclusive control over the marital status of those domiciled within its borders. In divorce proceedings, each state may determine the status of the party domiciled therein, and such determination will be entitled to full faith and credit in every other state. *Steckel* v. *Steckel,* 118 Va. 198, 199, 86 S. E. 833; *Humphreys* v. *Strong,* 139 Va. 146, 163, 123 S. E. 554.

█ In *Humphreys* v. *Strong, supra,* at page 164, we said that a person may move from one state to the jurisdiction of

another for the purpose of procuring a divorce, provided the removal is coupled with the intention of acquiring a *bona fide* residence in the latter state. The fact of domicile and not the motive for the choice is the controlling question. This we reiterated in *McFarland* v. *McFarland,* 179 Va. 418, 427, 19 S. E. (2d) 77. The same rule has been applied in Nevada. *Walker* v. *Walker,* 45 Nev. 105, 198 P. 433.

In two cases, *Williams* v. *North Carolina,* 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273, and 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577, 157 A. L. R. 1366, it was held that domicile of one party to a divorce creates an adequate relationship with the state to justify its exercise of power over the marital relation. 317 U. S., at page 298, 63 S. Ct., at page 213, and 325 U. S., at page 235, 65 S. Ct., at page 1097.

In the first *Williams' Case,* the Supreme Court expressly overruled its former holding in *Haddock* v. *Haddock;* 201 U. S. 562, 26 S. Ct. 525, 50 L. ed. 867, that North Carolina was not required to give full faith and credit to a Nevada decree, 317 U. S. 304, 63 S. Ct. 216.

The contentions of the appellees are particularly directed to an attack upon the validity of the divorce obtained by Roy Evans. They say they "are not especially interested" in the actions of the appellant in obtaining her divorce; but rely on her actions and those of Evans to show a conspiracy to obtain the divorces in such manner that their consorts would not know of the proceedings. We will, therefore, confine ourselves largely to the validity of the decree granted Evans.

The Evans' divorce decree, as we have shown, was entered in a court of general jurisdiction, which under the pleadings, the evidence and the findings of that court, had jurisdiction over the complainant and the subject matter involved. The form and nature of the substituted service met the requirements of procedural due process. The decree upon the record of the proceedings in which it was entered, appears to be valid in every regard. For the purpose of showing its validity, matters which were *de hors* the record were brought forth.

"It is the well-settled general rule that parties to an action or proceeding will not be permitted to attack collaterally the judgment rendered therein, except where such judgment is absolutely void for want of jurisdiction in the court rendering

it. This rule applies to judgments or decrees rendered in divorce proceedings.'' 17 Am. Jur., Divorce and Separation, § 482, page 393.

In 27 C. J. S., Divorce, § 334, page 1300, this is said:

''After a court has acquired jurisdiction, its findings are conclusive in all collateral proceedings; and the decree cannot be collaterally attacked for a defect, imperfection, irregularity, or insufficiency, whether in the proceedings, pleadings, or evidence, which does not render the decree void, but which renders it at the most, only erroneous.''

In *McNeir* v. *McNeir,* 178 Va. 285, 293, 16 S. E. (2d) 632, following the general rule, we said that one who has participated in the obtaining of a fraudulent divorce is estopped to deny its invalidity. The bar of estoppel is as effective as to parties and their privies as that of *res judicata* when the latter doctrine is applicable.

▮ The Full Faith and Credit Clause of the Federal Constitution places on us the duty to accord *prima facie* validity to the decree obtained by Evans. *Esenwein* v. *Commonwealth of Pennsylvania,* 325 U. S. 279, 280, 65 S. Ct. 1118, 89 L. ed. 1608, 157 A. L. R. 1396. It was at most voidable only. According to the great weight of authority its invalidity may not be shown on collateral attack by a stranger thereto, unless he shows that the decree deprived him of a right which existed at the time it was rendered. This is an exception to the general rule that a judgment regular on its face cannot be attacked collaterally, and its application is limited to the condition stated.

In Volume 1, Black on Judgments, 2d Ed., page 249, a voidable judgment is defined as ''one which, though not a mere nullity, is liable to be made void when a person who has a right to proceed in the matter takes the proper steps to have its invalidity declared. It always contains some defect which may become fatal. It carries within it the means of its own overthrow. But unless and until it is duly annulled, it is attended with all the ordinary consequences of a legal judgment. * * * If no proceedings are ever taken against it, it will continue throughout its life to all intents a valid sentence. If emanating from a court of general jurisdiction, it will be sustained by the ordinary presumptions of regularity, and it is not open to impeachment in any collateral action.''

In *Sherrer* v. *Sherrer,* 334 U. S. 343, 350, 68 S. Ct. 1087, 1090, 1097, 92 L. ed. 1429, 1 A. L. R. (2d) 1355, this is said:

"This Court has also held that the doctrine of *res judicata* must be applied to questions of jurisdiction arising in state courts involving the application of the full faith and credit clause, where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attack."

■ Referring to the case of *Davis* v. *Davis,* 305 U. S. 32, 59 S. Ct. 3, 83 L. ed. 26, 118 A. L. R. 1518, and others in related situation, it was there further said:

"Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and *where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.*" 334 U. S., at pages 351-352, 68 S. Ct. 1090-1091. (Italics supplied.)

The case of *Johnson* v. *Muelberger, supra,* decided March 12, 1951, involved an objection to collateral attack on a divorce decree, and the controlling issue was identical with that here. There the evidence disclosed that E. Bruce Johnson entered into a marriage, his third, with Genevieve Johnson, the appellant, in 1944. He died in 1945, leaving a will in which he gave his entire estate to his daughter, Eleanor J. Muelberger. After probate of the will, the third wife filed before a New York Surrogate notice of her election to take the statutory one-third share of the estate under the New York Decedent Estate Law. The daughter contested the status of the third wife, as surviving spouse, attacking the validity of the third marriage of her father on the ground that his second wife had obtained a divorce from him in Florida, without complying with the jurisdictional ninety-day residence requirement of that State.*

In the trial before the Surrogate, the undisputed facts disclosed that the second wife had not resided in Florida the required ninety days preceding the filing of her bill of complaint. The father appeared by attorney in the suit, however, and an-

* Florida Stat. Ann., 1943, § 65.02.

swered, denying the wrongful acts attributed to him; but he did not question the allegation of complainant as to her residence in Florida. The Surrogate ruled against the daughter. His ruling was appealed, and the case finally reached the Court of Appeals of New York. *In re Johnson's Estate,* 301 N. Y. 13, 92 N. E. (2d) 44.

As the Court of Appeals read the Florida cases to allow the daughter, "a stranger to the divorce action," to attack the decree collaterally in Florida, it decided she should be equally free to do so in New York.* The Supreme Court reversed because it found that the law of Florida would not permit the defendant to attack the Florida decree in that State; and, therefore, New York could not permit such an attack by reason of the Full Faith and Credit Clause. It cited in support *deMarigny* v. *deMarigny,* (Fla.), 43 So. (2d) 442. In conclusion it said: "When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit Clause forbids."

In *deMarigny* v. *deMarigny, supra,* a second wife sought to have the divorce decree of the defendant's first marriage declared invalid. The Supreme Court of Florida refused, holding that being a stranger, without then existing interest, to the divorce decree, she could not impeach it. It further refused to permit her to represent the estate in an effort to redress an alleged fraud on the court. In its opinion, the court quoted with approval, 1 Freeman on Judgments, 5th Ed., 636, § 319, where the author said:

"It is only those strangers who, if the judgment were given full credit and effect, would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition."

Under the more recent decisions of the Supreme Court, the

---

* The New York Court, however, recognized the rule which barred the daughter from making her attack on the decree in New York unless she would be permitted to make a collateral attack in the courts of Florida. 301 N. Y. 13, 17, 92 N. E. (2d) 44, 46.

effect which must be given, under the Full Faith and Credit Clause of the Federal Constitution, by one state to a divorce decree rendered in another state, may be summarized as follows: (1) Domicile of one party to the divorce proceeding creates an adequate relationship with that state to justify its exercise of power over the marital relation; (2) Where the decree has been rendered upon constructive service of process, and there has been no appearance by or on behalf of the defendant spouse, the question of domicile as basis of the jurisdiction of the court granting the decree may be re-examined at the instance of a person who would be prejudiced in regard to some pre-existing right, if the decree were given full effect; and (3). Where the decree is not susceptible to collateral attack in the courts of the state which granted the decree, it is not subject to such attack in other states. Cf. 17 Am. Jur., Divorce and Separation, § 751.5, Cumulative Supplement, 1951, page 125.

In 50 Columbia Law Review, 833, (1950), under the subject "Standing of Children to Attack their Parents' Divorce Decree," the author decries the wisdom of allowing a child to make a collateral attack upon his parents' divorce as a means of enforcing state policy. He views the wide diversity of opinion in the several jurisdictions as due to subtle distinctions based on makeweight argument. He says that while in New York, under a recently developed rule, "the fact that the parents may not question the decree does not affect the right of a child to do so,[1] the opposite rule, operative in South Carolina,[2] would seem to reach a more desirable result."

█ Under the common law of England, the right to collaterally attack the validity of a judgment is restricted to persons having a pre-existing interest at the time the judgment was rendered. *Upton* v. *Basset,* Vol. 1, Coke's Rep., Eliz. 445.[3]

---

[1] *In re Lindgren's Estate,* 293 N. Y. 18, 55 N. E. (2d) 849, 153 A. L. R. 936, *Urquhart* v. *Urquhart,* 272 App. Div. 60, 69 N. Y. S. (2d) 57, affirmed 297 N. Y. 689, 77 N. E. (2d) 7.

[2] *Watson* v. *Watson,* 172 S. C. 362, 174 S. E. 33.

[3] Commenting on this case, this is said in *Twyne's Case,* 3 Coke's Rep. 80b, 83a: "For first it was agreed, that by the common law an estate made by fraud should be avoided only by him who had a former right, title, interest, debt or demand (a 1), as 33 H. 6. a sale in open (e) market by covin shall not bar a right which is more ancient; nor a covinous gift shall not defeat execution in respect of a former debt, as it is agreed in 22 Ass. 72, but he who hath right, title, interest, debt or demand, more puisne, shall not avoid a gift or estate precedent by fraud by the common law."

Nevada, by statute, 4 Nevada Compiled Laws, (1929) Hillyer, section 9021, similar to that of Virginia, Virginia Code, 1950, § 1-10, has adopted the common law. So far as we are advised, the same rule of decision prevails in Nevada as in Virginia.

According to Black on Judgments, Vol. 1, 2d Ed., page 391, § 260, the general rule is as follows:

"The law does not permit wanton or unnecessary attacks upon its judgments, and they will stand as valid against any third person, who fails to show that he has a real and substantial interest in avoiding the judgment, and one which the law is bound to protect. As the cases express it, the rule against collateral attacks upon judgments does not apply to such third persons or strangers to the record as would be prejudiced in regard to some pre-existing right if the judgment were given full effect."

In Freeman, Law of Judgments, Vol. 2, 4th Ed., page 609, § 335, this is said:

"It must not, however, be understood that *all* strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment be given full faith and credit, would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment."

The rule in Virginia is in accord with the text authority. In *Wilcher* v. *Robertson*, 78 Va. 602, 617, the above statement of Mr. Freeman is quoted with approval.

In *Turnbull* v. *Mann*, 99 Va. 41, 45, 37 S. E. 288, we said:

"While it is true that the plea of *res adjudicata* can be filed only by the parties to the suit in which the judgment was entered, or their privies, it is equally true that judgments of courts, where they do not undertake to adjudicate the existing rights of persons who are not parties to the suit, cannot be questioned in collateral proceedings, but are binding on the courts and on all persons so far as they affect the rights of those who were parties."

To the same effect see *May* v. *Penton*, 45 Wyo. 82, 16 P. (2d) 35.

With respect to the general rule in divorce cases, this is said in *Davis* v. *Mitchell*, 27 Tenn. App. 182, 178 S. W. (2d) 889:

"This brings to the fore the further contention that a stranger to a divorce proceeding whose rights were not preju-

diced by the entry of the decree at the time it was rendered cannot attack such decree either directly or collaterally. This contention is plausible and may have merit. The general rule is laid down in *Magevney* v. *Karsch,* 167 Tenn. (3 Beeler) 32, 65 S. W. (2d) 562, 568, 92 A. L. R. 343, to be that the assailant in a collateral attack upon a judgment 'must show prejudice to some right of his that accrued prior to the rendition of the judgment.' That case leaves nothing to be said on the subject of collateral attacks on judgments. True, the judgment there under consideration was not one of divorce, but there is, it seems, no substantial difference in the applicable rule, at least in the absence of overriding considerations of public policy. Freeman on Judgments, Sec. 1203.''

An instructive note entitled ''The Dilemma of Third Party Attacks upon Foreign Divorces,'' may be found in the Brooklyn Law Review, Vol. 17, page 70, wherein it is said on page 92: ''It is further submitted that the only rule consonant with a functional public policy is that a divorce decree ought not to be collaterally attacked by a stranger thereto unless he demonstrates that the decree deprived him of a then extant right.''

No Nevada case has been called to our attention holding that a child may contest in Nevada its parents' divorce, where the parent was barred from contesting, as here, by estoppel. However, in the case of *In re Manse Spring and Its Tributaries,* 60 Nev. 280, 108 P. (2d) 311, 317, it was said that ''a stranger to the title'' having no right under the estate is in no position to question the regularity of ''proceedings'' adjudicating the status of title to lands. Furthermore, it has been held in Nevada that fraud in alleging or establishing required residence in a divorce action is a jurisdictional fact and not available as a ground to annul the decree. *Confer* v. *Second Judicial Dist. Court,* 49 Nev. 18, 234 P. 688, 236 P. 1097.

It seems clear that none of the appellees had any extant right that was prejudiced in the proceedings of Roy Evans to obtain a divorce, or in the rendition of the decree. Kiah Evans was not a party to the proceedings. There is no evidence that Evans was an ''employee'' within the contemplation of any Workmen's Compensation Act when he obtained his decree of divorce.

The appellees, upon whom the burden rested, have not shown that they, or either of them, would be permitted to make

a collateral attack on the decree in the courts of Nevada. In that situation, the decree is not susceptible to attack by them in the State of Virginia. *Johnson* v. *Muelberger, supra,* 340 U. S. 589, 71 S. Ct. 474.

Virginia Code, 1950, § 8-271, provides:

"Authentication of records of courts of United States or other states.—The records and judicial proceedings of any court of the United States, or of any state, or of any country subject to the jurisdiction of the United States, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice, or presiding magistrate of such court, to be attested in due form, shall have such faith and credit given to them in every court within this State, as they have in the courts of the state, territory, or district whence such records come. (Code 1919, § 6205.)"

The award is reversed to the extent that it denies compensation to the appellant, and the case is remanded to the Industrial Commission, with direction to amend its award to include the appellant as the widow of the deceased, and to divide the compensation between her and the dependent child by his first marriage as provided by law.

*Reversed and remanded.*