In the Matter of the Estate of Harvey C. Locke, Deceased. Lela A. Locke, Appellant; Philip Korn, as Executor and Legatee, et al., Respondents; Kathleen L. Rabe, Intervenor-Respondent.

Third Department, June 1, 1964.

*John A. Bonomi* and *Manuel Dittenheimer* for appellant.

*N. LeVan Haver* for respondents.

*Connelly & Connelly* (*Vincent G. Connelly* of counsel), for intervenor-respondent.

Hamm, J. The appellant, alleged widow, filed a notice of election to take her intestate share. The respondents thereupon served petitions contesting the validity of the notice of election. The appellant answered stating that a divorce obtained by her husband, the testator, against her in the State of Florida "was obtained by fraud practiced * * * on the respondent herein".

The action for divorce in the State of Florida was commenced by the testator in January of 1953. The appellant was served by publication but appeared personally by Florida attorneys about February 27, 1953, by interposing an answer containing an affirmative defense and counterclaim. There is no contention by the appellant that her appearance through her attorneys was unauthorized. In May of 1953 the parties entered into a formal separation agreement which was to be and later was incorporated in the Florida divorce decree. In June of 1953 testimony was taken before a special master in the Florida divorce action in which the appellant's attorneys participated. The record of the

proceedings before the special master at the conclusion of the testimony recites: "Thereupon, counsel for the defendant announced that they had no testimony to offer and waived notice of filing of Master's report, right of exceptions thereto, notice of application for final decree and consent that this case may proceed henceforth *ex parte* without further notice to them."

Section 87 of the Decedent Estate Law provides: "No distributive share of the estate of a decedent shall be allowed under the provisions of this article, either (a) to a spouse against whom or in whose favor a final decree or judgment of divorce recognized as valid by the law of this state has been rendered".

A Florida divorce is not subject to collateral attack in this State even by a stranger to the action. (*Johnson* v. *Muelberger,* 340 U. S. 581.) In so holding the court said at page 587 as to attack by a spouse: "It is clear from the foregoing that, under our decisions, a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree. Such an attack is barred where the party attacking would not be permitted to make a collateral attack in the courts of the granting state. This rule the Court of Appeals recognized, 301 N. Y. 13, 17, 92 N. E. 2d 44, 46." The appellant offered evidence that the testator was at no time a resident of or domiciled in the State of Florida. With reference to this evidence the Surrogate correctly stated in his decision: "this constitutes a collateral attack upon the decree granted in the State of Florida in an action wherein the respondent voluntarily appeared. Having so appeared a party to the decree cannot proceed in a sister State to collaterally attack the jurisdiction of the Court to render such a decree."

As previously mentioned the answer of the appellant to the petitions pleaded as an affirmative defense that the divorce obtained by the testator against her "was obtained by fraud practiced by Harvey Carlton Locke [the testator] on the respondent herein". Giving this pleading the liberal construction to which it is entitled we construe it as broad enough to encompass and allege fraud in inducement of the appellant's appearance.

Prior to the institution of the divorce action in Florida the appellant in Ulster County had brought an action for separation against the testator and this action was pending when the Florida divorce action was commenced. In the separation action the appellant as plaintiff was represented by a local attorney and the testator as defendant was represented by a firm of two

local attorneys. After the appellant had appeared in the Florida divorce action she participated in negotiations which led to a separation agreement, which was eventually incorporated in the Florida divorce decree. During the course of the negotiations the appellant, the appellant's local attorney in the separation action and the testator's two local attorneys in the separation action conferred in the office of the testator's attorneys.

As to what transpired at this conference the appellant's testimony was as follows:

"Q. Was it your belief while you were married to him that he was a wealthy man? A. He didn't show no signs of it to me.

"Q. I know that but was it your belief that he was a wealthy man? A. Well, it would be hard to answer.

"Q. I'm only asking for your belief, or what you believed while you were married to him. Did you believe that he was a wealthy man? A. No, not really.

"Q. So at the time of the negotiation in the Kooperman office when they made you offer of settlement, you decided to accept it, is that right? A. I did.

"Q. And was that on any representation made by Ethel or Joseph Kooperman as to his financial worth? A. They said he, they found out, wasn't worth as much as I thought he was or had been told he was.

"Q. And the offer that was then made to you was that you were to receive $300.00 a month for a period of eleven years? A. Right.

"Q. During those negotiations, did either Ethel or Joe Kooperman make any threats to you? A. They told me I could take it or else.

"Q. Well now, give it to us more in substance just what was said. A. They said that either I would accept it or they would fight it in Florida and the substance of it was, I wouldn't receive a cent.

"Q. If they won in Florida, you wouldn't receive a cent? A. That's right.

"Q. Is that one of the reasons why you accepted the agreement? A. That is absolutely one, exactly one of the reasons.

* * *

"Q. Now Mrs. Locke, when the Koopermans, either one of them, stated or represented to you that Harvey Locke was comparably a poor man, wasn't worth anything like people thought he was worth, did you believe her? A. I took her word for it.

"Q. And based on her said representation, did that induce you to accept this offer of settlement of $300.00 a month? A. It did.

"Q. If you had known such representation was false and Harvey Locke was actually a very wealthy man, would you have accepted only $300.00 a month? A. I would not have."

The appellant's local attorney in the separation action also testified and corroborated substantially the quoted testimony of the appellant.

The testimony of the appellant and the testimony of her attorney were received subject to connection as to agency or authority. At the conclusion of the testimony the Surrogate said "I have stricken all of the testimony of Mrs. Locke and Mr. Dittenheimer on alleged claim of fraud on the ground you haven't related this testimony to the deceased". In striking the testimony the Surrogate acted on an invalid ground. The testator's local attorneys had appeared for him in the separation action and their authority was presumed from their appearance and the appellant properly acted on that presumption. (*Carpenter* v. *New York Trust Co.,* 174 App. Div. 378, affd. 221 N. Y. 719.) An attorney retained in an action has implied authority, by virtue of his retainer, to do what may be necessary to advance his client's interest. (*Oliver* v. *Bennett,* 65 N. Y. 559; *Clinton* v. *New York Cent. & H. R. R. R. Co.,* 147 App. Div. 468; *Matter of Cusimano,* 174 Misc. 1068; 1 Carmody-Wait, New York Practice, pp. 303–304.) The conference of the testator's attorneys with the appellant and the appellant's attorney to arrange for the separation agreement, which ultimately was effectuated and incorporated in the Florida divorce decree, was clearly within the scope of their authority. Moreover, the testator's signing the agreement confirmed their authority and ratified their acts (3 N. Y. Jur., Attorney and Client, § 19). However, there was a valid objection before the court, the objection that evidence of statements made by the testator's attorneys in the separation action after the appellant's appearance in the divorce action constituted, as counsel stated, "attempts to collaterally attack the Florida decree". As there was a valid ground of objection before the Surrogate his ruling did not constitute reversible error and the evidence was legally stricken. (Cf. *Bloodgood* v. *Lynch,* 293 N. Y. 308, 313.)

However, in his decision the Surrogate stated: "In the interest of justice and to avoid a rehearing of this issue, the record will be considered to include all of the evidence produced, evidentiary rulings notwithstanding". The Surrogate could not go beyond the record in making his decision. The Surrogate also said: "On the entire record it is the finding of this Court that the proof is insufficient to establish the alleged fraud, duress or coercion. The evidence indicates that the conversations in

question were in the nature of negotiations which led to the agreement which was reduced to writing and signed by the parties. This agreement was incorporated in the decree by consent of the parties and, thus, reaffirmed. In addition, Lela Ann Locke has received the benefits of this agreement in the form of the payment of her counsel fees and monthly payments in the sum of $300.00 to date, and continuing until May, 1964 ". Had the evidence been before him the Surrogate should have stated that the remedy, if any, for the alleged postappearance misrepresentations was in the court of the rendering State. As to the existence of such a remedy see *Miller* v. *Miller* (134 Fla. 725).

We make new findings that the appellant's appearance in the Florida divorce action was voluntary and not induced by fraud, duress or coercion on the part of the testator and that the Florida decree is entitled to full faith and credit in this State.

The decree dismissing the appellant's notice of election should be affirmed.

Gibson, P. J., Herlihy, Reynolds and Aulisi, JJ., concur.

Decree affirmed, with costs to all parties filing briefs payable from the estate.