94 N.J. Super. 539 (1967)
229 A.2d 285
BRONYA KRAM, PLAINTIFF,
v.
PHILIP KRAM, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 15, 1967.
*543 Mr. Hyman Halpern for plaintiff.
Mr. Irving Mandelbaum for defendant (Messrs. Irving & Barry R. Mandelbaum, attorneys).
HARTMAN, J.C.C. (temporarily assigned).
Plaintiff seeks a declaratory judgment that she is still defendant's lawful wife and that an ex parte divorce secured by him in the State of Florida is of no force and effect in New Jersey.
No testimony was offered by either side at the trial. Determination of the issues was based on stipulated facts and the record.
The parties were married in Poland in 1939. They established the matrimonial domicile in New Jersey ten years later and lived here with the three children born of the marriage. On March 29, 1961 the wife instituted an action for separate maintenance against the husband in the Superior Court of New Jersey (Docket M-3519-60). Defendant contested the main action and counter-claimed against the wife for an absolute divorce on the ground of extreme cruelty.
The opposing actions were fully contested and tried, resulting in (1) the entry of a judgment of separate maintenance in favor of the wife, and (2) dismissal of the husband's counterclaim for divorce. Judgment was entered April 5, 1963.
Thereafter defendant moved to Florida. On June 15, 1964 the wife received in the mail a copy of a notice of publication and a copy of a divorce complaint filed against her by the defendant in that state. His Florida complaint was based on extreme cruelty. The wife filed no appearance in the Florida action nor did she participate in it in any way. She did, however, secure at the foot of the original New *544 Jersey action on July 8, 1964 an order to show cause, including the usual ad interim restraints, why defendant should not be enjoined from pursuing his divorce action in Florida. Despite notice of the restraints, defendant proceeded to secure an ex parte divorce in that state, judgment being entered on July 24, 1964. He then remarried.
Defendant's New Jersey counsel moved for a dismissal of the restraints and the same were vacated by order of this court on December 18, 1964 for the reason that the order to show cause should have been taken in an independent action, not as a supplement to the separate maintenance judgment. A separate complaint was then filed by the wife and the two actions were consolidated.
Defendant filed an answer and raises separate defenses. He contends that he has been a bona fide resident of the State of Florida since March 13, 1963 (23 days before the entry of the New Jersey judgment which dismissed his counterclaim). He also asserts that as a bona fide resident of Florida "he had the right to institute the divorce proceedings therein and the decree granted is valid and must be given full faith and credit by the State of New Jersey."
During the course of counsels' arguments on the date fixed for this hearing, there being no evidence offered to dispute defendant's residence in Florida, nor his animus manendi, I found as a fact that his residence there must be taken as a presumed bona fide one. The burden of disproof was on plaintiff. When a proceeding is brought to attack a sister-state decree of divorce and that attack asserts a fraudulent and pretended residence in the rendering state the burden of proof rests on the party so attacking. The fraud will not be presumed. Peff v. Peff, 2 N.J. 513 (1949); Brown v. Brown, 28 N.J. Super. 165 (App. Div. 1953); Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951). On this point of plaintiff's complaint she has failed, and if this were the only basis for her attack on the validity of the Florida divorce, full faith and credit would be accorded to it.
*545 But the main thrust of plaintiff's attack is that defendant was barred by the doctrine of res judicata from bringing his action in Florida at all. She contends that the dismissal of the defendant's counterclaim for divorce for extreme cruelty in New Jersey was a final adjudication between the parties, and that judgment constituted a bar to a second suit by defendant in New Jersey or elsewhere.
In Reik v. Reik, 101 N.J. Eq. 523 (Ch. 1927), Vice Chancellor Ingersoll held:
"Independent of the full faith and credit clause the general principle recognized by all courts is, that in a subsequent action between the same parties as plaintiff and defendant, involving the same issues as those of a former action, the judgment in the former suit, whether in a domestic or foreign court, is an estoppel as to the issues actually litigated and determined in the first action."
Cromwell v. County of Sac., 94 U.S. 351, 24 L.Ed. 195 (1876); 2 Black on Judgments, § 610; Lazier v. Westcott, 26 N.Y. 146, 151 (Ct. App. 1862).
Defendant argues that his proceeding for divorce on the ground of extreme cruelty in Florida is a different cause of action than his dismissed counterclaim for divorce in New Jersey brought here on the ground of extreme cruelty. This is posited on the theory that the degree of proof required under the Florida statute authorizing divorce relief for extreme cruelty differs from the requirements of proof of the same ground under our own statute. He contends, further, that the wife has the burden of demonstrating the similarity of the testimony, and that she has failed to do so. I have examined the Florida statute governing extreme cruelty as a ground for divorce and the proof required in that state to warrant a judgment, and compared them with our own. There is no substantial difference between the two states.
"Extreme cruelty by defendant to complainant" is the fourth ground for divorce prescribed in 5 Fla. Stat. Ann., § 65.04. In Riehl v. Riehl, 60 So.2d 35 (1952), the Florida Supreme Court held:
*546 "* * * extreme cruelty recognized by our statute as a ground for divorce is such conduct by the husband or wife toward the other consort as will endanger his or her life, limb or health, or as will cause a reasonable apprehension of bodily hurt. The injury or danger of injury may be mental or physical, but it must be of such character as will render it impracticable for the complainant to discharge, with reasonable safety, his or her marital duties."
Our New Jersey statute made extreme cruelty a ground for absolute divorce under a 1923 enactment known as the Blackwell Act, L. 1923, c. 187, § 1, now N.J.S. 2A:34-2.
It has repeatedly been held in this State that "extreme cruelty is that degree of cruelty, either actually inflicted or reasonably inferred, which endangers the life or health of the aggrieved party, or renders his or her life one of such extreme discomfort and wretchedness as to incapacitate him or her, physically or mentally, from discharging the marital duties." 11 N.J. Practice (Herr, Marriage, Divorce and Separation, 3d ed.), § 1265, pp. 496-497, citing, among others, Oliver v. Oliver, 127 N.J. Eq. 367 (E. & A. 1940); Friedman v. Friedman, 37 N.J. Super. 52 (App. Div. 1955). Personal violence or physical abuse is not the only form of extreme cruelty that warrants a divorce. Germain v. Germain, 20 N.J. Super. 565 (Ch. Div. 1952); Martinique v. Martinique, 50 N.J. Super. 210 (Ch. Div. 1958).
I find that the statutory ground of extreme cruelty of the State of Florida and the degree of proof required in that state to warrant a judgment of divorce are the same as the Law and requirements of proof in New Jersey. This disposes of defendant's contention relative to the degree of proof.
He further asserts that the dismissal of his extreme cruelty cause in New Jersey is not res judicata of his Florida complaint for divorce for extreme cruelty for the reason that the facts relied upon by defendant in Florida differed from those of his New Jersey counterclaim, thus constituting his Florida action a different cause of action. The answer to this requires a comparison of the defendant's allegations of extreme cruelty in both actions. Paragraph 4 of defendant's counterclaim for divorce in New Jersey particularizes his *547 charges of extreme cruelty, as does paragraph 5 of his Florida complaint.
The New Jersey counterclaim alleged that the wife continually nagged him and demanded that he make more money; she cursed at him for minor matters in front of the children; she took funds from a joint account, put them in her own account and refused to return the funds; in October 1960 she struck him with her shoe in front of the children; she threatened to kill all the members of the family if he did not earn more money; she required him to sleep by himself in the attic, and that by reason of the foregoing he was compelled to separate himself from her.
Defendant's Florida complaint is a virtual repetition of the allegations of his New Jersey counterclaim with the following exceptions: (1) he omitted any reference to the allegation that the wife threatened to kill him and the rest of the family if he didn't make more money; (2) he added that the wife belittled him, called his business customers not to do business with him, and threatened his witnesses against coming to court so that he could not corroborate his case, and that her actions forced him into bankruptcy.
Defendant's charge that his wife's actions prevented him from corroborating his counterclaim in New Jersey is frivolous, to say the least. He was represented by competent counsel in the New Jersey action and there was ample opportunity to bring the facts before the court, assuming those facts were true. The court could have dealt with the wife by way of contempt. Her actions would have seriously affected her credibility and could have proved damaging to her case and most favorable to defendant's. The only inference to be drawn from defendant's failure to raise the point in the New Jersey action is that there is no substance to the charge.
Defendant's assertion in the Florida action that his wife's conduct forced him into bankruptcy is also frivolous. He was declared a bankrupt during the pendency of the New Jersey proceedings. Consequently, this fact was known and available for pleading before trial and before the judgment of *548 dismissal was entered. The only other added allegation of cruelty in the Florida complaint was that the wife was vengeful in that she had him "hauled" into court on a charge of abandonment (the charge which resulted in the judgment in her favor). This is such a naive allegation of cruelty as requires no comment.
However one may compare and analyze the allegations of extreme cruelty made by defendant in New Jersey and thereafter in Florida, the inexorable conclusion is that the actions are one and the same. The parties never lived together from a time preceding the institution of the New Jersey proceedings, and no contacts between them thereafter created any new incidents of extreme cruelty after the termination of the New Jersey proceedings.
I have therefore concluded that the facts presented for determination by the Florida court were substantially identical to the facts presented and determined in the New Jersey action. The causes of action and the relief prayed were likewise identical, and it cannot be denied that the parties were the same.
A Florida case applicable to the issue of res judicata raised here is Riehl v. Riehl, supra. There, the parties were married in Ohio in 1928. Three children were born of the marriage. In 1945 the wife instituted a divorce proceeding against the husband in the domiciliary State of Ohio charging the husband with extreme cruelty and gross neglect of duty. The husband filed a cross-petition for divorce in which he charged the wife with extreme cruelty and gross neglect of duty. The Ohio court heard the evidence adduced by the respective parties and the suit resulted in a judgment dismissing the complaint and the cross-petition.
Thereafter the husband filed his complaint for divorce in the State of Florida, asserting extreme cruelty as the ground. The wife answered, setting up the Ohio proceedings and contending they were entitled to full faith and credit and should operate as a bar to the Florida action. The matter was referred to a master to take testimony. It appears from the *549 opinion that Ohio procedure does not require a particularization in the complaint of the acts relied upon for relief by way of divorce for extreme cruelty, whereas Florida practice requires such particulars, as does New Jersey. This apparently explains the need for the taking of the testimony in the Florida action to determine whether there was identity of the parties and identity of the facts essential to the maintenance of the action.
The master recommended and the Chancellor held that the Ohio judgments of dismissal were not entitled to full faith and credit, and a divorce was awarded to the husband. On appeal the trial court was reversed by the Supreme Court of Florida, with no dissents. In a per curiam opinion the court held:
"In the case of Gordon v. Gordon, Fla., 59 So.2d 40, we endeavored to clarify the distinction which exists between res adjudicata and estoppel by judgment. A study of this record in the light of the opinion in the case of Gordon v. Gordon, supra, discloses the fact that in determining whether full faith and credit should be given to the Ohio decree the test proper to be applied is res adjudicata. The parties in both cases are the same and the cause of action, i.e. extreme cruelty, was alleged by the husband in each suit. When such a situation obtains the decree of a sister state should be given full faith and credit because such decree places at rest every justiciable controversy."
As I have already mentioned, no testimony was taken before me. Counsel relied on the stipulated facts and record. That record included, inter alia, the judgment of this court dismissing the husband's counterclaim, the New Jersey counterclaim itself which particularized the alleged acts of cruelty upon which he relied, and his Florida complaint for divorce with its particularization of the alleged acts of cruelty relied upon. I have concluded that testimony is not necessary in this case to determine the issues of full faith and credit, and res judicata. The New Jersey counterclaim and judgment thereon, and the subsequent Florida complaint by the same party, frame an adequate record for determining whether the doctrine of res judicata is applicable.
*550 In a concurring opinion in Riehl, supra, Justice Chapman added:
"* * * [t]he general rule is that a person relying on the doctrine of res adjudicata as to a particular issue involved in a pending case bears the burden of introducing evidence to prove that such issue was involved and actually determined in the prior action, where this does not appear from the record. This may be established by the former record in the cause or by proof by competent evidence consistent therewith. Burthe v. Denis, 133 U.S. 514, 10 S.Ct. 335, 33 L.Ed. 768, 30 Am. Jur. 999-1000, § 285; 50 C.J.S., Judgments, § 719, pages 198-204; Little Brothers v. Barlow, 37 Fla. 232, 20 So. 240. In the latter case we held, `that, if the matter in issue in the former suit does not appear upon the record offered as evidence of such further adjudication, it may be shown by extrinsic evidence.'" (Emphasis supplied)
A record consisting of pleadings and judgment, unimpeached, warrants the application of res judicata as a bar. A second action seeking to relitigate the facts may be enjoined. Lane v. Rushmore, 125 N.J. Eq. 310 (E. & A. 1939).
Holding that a consent judgment with prejudice operates as a bar to a relitigation of the issue of the constitutionality of an ordinance, Justice Proctor, speaking for the court in Washington Twp. v. Gould, 39 N.J. 527 (1963), said:
"It is well-settled that where a judgment of a court of competent jurisdiction directly determines a right, question or fact distinctly put in issue, such judgment estops the parties or their privies from thereafter relitigating the same issue in a subsequent proceeding between them, regardless of its nature or form. Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 42 L.Ed. 355, 377 (1897); Robinson-Shore Development Co. v. Gallagher, 26 N.J. 59, 67 (1958); N.J. Highway Authority v. Renner, 18 N.J. 485, 493-494 (1955); Hancock, Comptroller v. Singer Mfg. Co., 62 N.J.L. 289, 339-340 (E. & A. 1898). Restatement, supra, § 68; Scott, `Collateral Estoppel by Judgment,' 56 Harv. L. Rev. 1, 2-3 (1942); 30A Am. Jur., Judgments, § 371, pp. 411-415 (1958); Annotation, 147 A.L.R. 991, 996-997 (1943).
Of course, such an estoppel extends only to such facts and conditions as existed at the time the prior judgment was rendered, and would not bar relitigation where, after the rendition of the judgment, events or conditions arise which create a new legal situation or alter *551 the rights of the parties. Lasasso v. Lasasso, 1 N.J. 324, 328 (1949); 30A Am. Jur., Judgments, § 335, pp. 379-380 (1958)." (at p. 533)
The doctrine of res judicata comes to us from the Roman law and became part of the common law in the 1100's. Foster, "And Something About Res Judicata," 22 U. of Pitts. Law Rev. 2, pp. 313, 322 (1960). Where the second action is no more than a repetition of the first, the former stands as a barrier to the second. The rule precludes parties from relitigating substantially the same cause of action. When a court of competent authority has jurisdiction over the parties and the subject matter, and has handed down a judgment after full hearing afforded both parties, and no appeal has been taken from the judgment, the litigation of that cause is at an end. The judgment bars the losing party from again bringing suit on his action, and operates as a merger of a cause of action into the judgment for a party who successfully brings suit. Scott, "Collateral Estoppel by Judgment," 56 Harv. L. Rev. 1, et seq. (1942).
Estoppel by record, or collateral estoppel, is distinguishable from res judicata and is sometimes said to be a second aspect of res judicata. Collateral estoppel is applicable when a fact issue, or a law issue, has been determined even though the cause of action secondly brought is different from the first action. It is also applicable in some courts to issues which could have been raised but which were not. Foster, supra; Paulsen, "Migratory Divorce," 24 Ind. L.J. 25 (1948); Scott, supra; Lawlor v. Nat'l Screen Serv. Co., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed.2d 1122 (1955). See New Jersey cases: Hudson Transit Corp v. Antonucci, 137 N.J.L. 704 (E. & A. 1948), citing City of Paterson v. Baker, 51 N.J. Eq. 49 (Ch. 1893); Hancock v. Singer Mfg. Co., 62 N.J.L. 289, 339 (E. & A. 1898); In re Walsh's Estate, 80 N.J. Eq. 565 (E. & A. 1909); Nuzzi v. U.S. Casualty Co., 121 N.J.L. 249 (E. & A. 1938); Misuriello v. Daly, 125 N.J.L. 412 (E. & A. 1940) (a pleadable defense); *552 Reeves v. Jersey City, 30 N.J. Super. 392, 400-401 (App. Div. 1954), affirmed o.b. 16 N.J. 529 (1954).
When the doctrine of res judicata becomes applicable the final judgment of a court of competent jurisdiction is entitled to the constitutional obligation of respect called for by the full faith and credit clause of the federal constitution. Art. IV sec. 1. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355 (1948), Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451, 1 A.L.R.2d 1376 (1948), and Schlemm v. Schlemm, 31 N.J. 557 (1960).
In Schlemm, supra, Justice Jacobs quoted from Johnson v. Muelberger, 340 U.S. 581, 584, 71 S.Ct. 474, 476, 95 L.Ed. 552, 556 (1951):
"From judicial experience with and interpretation of the clause, there has emerged the succinct conclusion that the Framers intended it to help weld the independent states into a nation by giving judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum. The faith and credit given is not to be niggardly but generous, full. `(L)ocal policy must at times be required to give way, such "is part of the price of our federal system."'
This constitutional purpose promotes unification, not centralization. It leaves each state with power over its own courts but binds litigants, wherever they may be in the Nation, by prior orders of other courts with jurisdiction. `One trial of an issue is enough. "The principles of res judicata apply to questions of jurisdiction as well as to other issues," as well to jurisdiction of the subject matter as of the parties.' The federal purpose of the clause makes this Court, for both state and federal courts, the `final arbiter when the question is raised as to what is a permissible limitation on the full faith and credit clause.' 340 U.S., at page 584, 71 S.Ct., at page 476, 95 L.Ed., at page 556."
The judgment of divorce procured ex parte by the defendant herein in the State of Florida is not entitled to full faith and credit in this State. Defendant had no legal right to institute an action for divorce in the State of Florida, or elsewhere, for the same cause of action which had already been fully litigated and determined against him in New Jersey. The New Jersey judgment was res judicata as to that *553 cause of action. The law is clear that it cannot be relitigated. This is the law of the State of New Jersey and it is the law of the State of Florida.
Plaintiff wife is entitled to a declaratory judgment of this court, that she is still the lawful wife of the defendant.